58        SUPREME COURT OF WISCONSIN.   [Sept.

State ex rel. Walthers v. Jung, 175 Wis. 58.

STATE EX REL. WALTHERS and another, Appellants, vs.
JUNG, Town Clerk, Respondent.

*May 6—September 23, 1921.*

*Taxation: Review of assessment: Evidence: Sufficiency: Compari-
son of assessment with others in district.*

1. Under sec. 1052, Stats., requiring real property to be valued by
   the assessor at the full value which could ordinarily be ob-
   tained therefor at private sale, if in any reasonable view the
   evidence taken by the board of review furnishes a substantial
   basis for its conclusion as to the value of the land and there
   is nothing to show that it acted arbitrarily or dishonestly, its
   decision will not be interfered with by the courts.
2. A taxpayer may not complain of a valuation which could ordi-
   narily be obtained for his property at private sale unless there
   is such a general undervaluation as will result in an excessive
   tax to him; but such a situation is not shown by a com-
   parison of the valuation placed on his property with less than
   two per cent. of the property in the district, unless it appears
   that improper considerations influenced the valuation of his
   property.
3. Where the decision of a board of review is sustained by direct
   and positive evidence as to the value of certain lots, and the
   only impeaching testimony is that of a witness who compared
   the assessment of the lots with the assessments placed on less
   than two per cent. of the other tracts of land in the assess-
   ment district, the determination of the board will not be re-
   versed on *certiorari*.

APPEAL from a judgment of the circuit court for Sheboy-
gan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

*Certiorari* to review the determination of the board of
review of the town of Rhine, Sheboygan county, Wisconsin,
in the matter of objections made by relators to the assess-
ment of certain lands in that town. From a judgment of
the circuit court affirming the action of the board of review
relators bring this appeal.

*F. J. Walthers* of Milwaukee, for the appellants.

*A. C. Prescott* of Sheboygan, for the respondent.

The following opinion was filed July 13, 1921:

OWEN, J. Relators own two pieces of land in the town of Rhine, Sheboygan county, Wisconsin. These tracts or pieces of land are referred to as lots $c$ and $d$. Lot $c$ contains one and eleven one-hundredths acres and lot $d$ contains five and one one-hundredth acres. These lots abut on Crystal Lake, and their principal value is due to their adaptability to summer-cottage purposes. We gather from the record that at one time these lots were subdivided: lot $c$ having been divided into three lots and lot $d$ into ten lots, but that prior to the assessment here complained of the plat subdividing said lots had been vacated. Lot $c$ was assessed by the assessor at \$1,700 and lot $d$ at \$2,800. Through their attorney, E. J. Walthers, the relators made objection to such assessments before the board of review, and the only evidence produced to establish the invalidity of such assessment was the testimony of such attorney, E. J. Walthers. He introduced in evidence the assessments of nine other tracts of land in said town and testified that in proportion to the assessments placed on such other tracts of lands the assessment on lots $c$ and $d$ was too high. The lands with which he compared the assessment of lots $c$ and $d$ were either in the main agricultural lands, or lots adapted to summer-cottage purposes, located not on Crystal but on Elkhart Lake. His manner of testifying was to call attention to the assessment of such other lands, followed by the statement that in his opinion the assessment of lots $c$ and $d$, as compared with such assessment, was too high. He did not pretend to testify to the true value of lots $c$ and $d$. His nearest approach to that is the following and similar statements:

"Placing the same standard on lots $c$ and $d$ that the assessor has put on lots near the Reis lots would result in a valuation of less than \$400 for lot $c$ and less than \$1,500 for lot $d$."

Mr. R. A. La Budde testified that the lots in lot *c* were worth from $300 to $500 per lot; and Mike Lauer testified that lot *c* was worth the sum of $1,500 and the lots in lot *d* (meaning the subdivisions thereof as they existed before the vacation of the plat heretofore mentioned) were worth from $400 to $600 apiece; there being ten of such subdivisions or lots in said lot *d,* it would make the entire lot worth from $4,000 to $6,000.

The board of review reduced the assessment on lot *c* to $1,500 and left the assessment on lot *d* at $2,800, as fixed by the assessor. The board of review, therefore, had direct and positive evidence sustaining its action. It is well settled that if, in any reasonable view, the evidence taken furnishes a substantial basis for the conclusion of the board, and there is nothing to show that it acted arbitrarily or dishonestly, its decision will not be interfered with by the courts. *State ex rel. Althen v. Klein,* 157 Wis. 308, 147 N. W. 373, and cases there cited. The record, therefore, presents this situation: the statute requires the land to be valued at the full value which could ordinarily be obtained therefor at private sale. Sec. 1052, Stats. The board had before it evidence showing such value of lot *c* to be $1,500 and of lot *d* to be considerably more than $2,800, at which amounts it fixed the assessment.

The only evidence in contradiction is that of Mr. Walthers, the attorney, who testified that such value was relatively too high when compared with the values placed on certain other lands in the town. This comparison included only nine other tracts of land. The town of Rhine is a full township, containing thirty-six sections, which alone would afford 576 governmental descriptions. This raises the question whether a taxpayer may impeach an assessor's valuation of his property by comparing such valuation with less than two per cent. of the descriptions in the assessment district, and testimony that, as compared with such descriptions, the assessed value placed on his land is too high. If this be true, assessments have a precarious stability, because

common knowledge informs us that the average taxpayer can conscientiously testify that his holdings are valued too high in comparison with that of certain of his neighbors. Such a showing does not negative the possibility that, as compared with the other ninety-eight per cent., his property may be valued too low, and falls far short of convincing proof that the valuation placed upon his property will result in an unjust tax upon him. A taxpayer has no complaint when a valuation which could ordinarily be obtained therefor at private sale is placed upon his property, unless there is such a general undervaluation of the other property of the assessment district as will result in an excessive tax as to him. Such a situation is not shown by proof which compares the valuation of a taxpayer's property with less than two per cent. of the other property in the assessment district, unless it appears that improper considerations influenced the valuation of the objector's property, as was the case in *State ex rel. Heller v. Lawler,* 103 Wis. 460, 79 N. W. 777, where the assessment authorities erroneously assumed that the mere act of platting vacant and unimproved property attached to it a value greatly in excess of other property in the same governmental section.

In this case the determination of the board of review is sustained by direct and positive evidence relative to the value of the property in question. This is impeached only by the testimony of Mr. Walthers, the attorney, who states that, as compared with less than two per cent. of the other tracts of land in the town, the valuation is placed too high; but his testimony sustains the conclusion that the lands with which the comparison is made are assessed too low, as readily as the conclusion that relators' lands are assessed too high. The action of the board of review should not be overturned on such evidence, if indeed it is of any probative force whatever upon the question involved.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on September 23, 1921.