STATE EX REL. HENSEL and wife, Plaintiffs: SCOTTY SMITH CONSTRUCTION COMPANY, Appellant, v. TOWN OF WILSON and others, Respondents.

*No. 294. Argued May 2, 1972.—Decided June 6, 1972.*
(Also reported in 197 N. W. 2d 794.)

102

For the appellant there was a brief by *Miller, Hayes & Werner, S.C.,* of Sheboygan, and oral argument by *Anthony Werner.*

For the respondents there was a brief by *Walter, Hopp & Hodson* of Sheboygan, and oral argument by *Alexander Hopp.*

WILKIE, J. One issue is presented by this appeal: Is the 1969 assessment discriminatory and invalid because the board of review failed to consider the value of comparable property?

In setting aside the 1968 assessment the trial court aptly stated:

"Since the 1968 assessment has now been brought before us twice and we have been unable to affirm it, it is perhaps proper for us to state that unless the assessment of this property for the year 1968 approximates the assessment per acre for that year placed on the comparable adjoining properties we will have difficulty in affirming the assessment should the matter again be brought before us."

But what is wrong with the 1968 assessment is equally wrong with the 1969 assessment. It is discriminatory. The record before the board of review clearly demonstrates that the value of comparable property in the area was not considered and the Wisconsin constitutional requirement of art. VIII, sec. 1, that "taxation shall be uniform" was not followed.

In rejecting appellant's claim that the property was improperly assessed for 1969, the circuit court held that once there had been a fair sale which established the value of the property, the court was precluded from considering other factors to determine market value. The court concluded that inasmuch as the property had been recently (1969) sold for $13,500, which was a fair

sale price, the $5,700 assessment was valid regardless of the assessment of comparable property.

In reaching this conclusion, the trial court relied on this court's opinion in *State ex rel. Enterprise Realty Co. v. Swiderski,*[1] wherein it was held:

"Where the clear market value is *not* established by a sale or sales the assessor or the board of review should consider all the facts collectively which have a bearing upon such market value, in order to determine it. But such facts only indicate what the fair market value is and there is no occasion to resort to them, and it is wrong to do so, when the market value is established by a fair sale of the property in question or like property."

While a fair sale determines the evaluation of the property in such a way that the assessor and board of review are not free to consider other factors which collectively have a bearing upon such market value, neither *Enterprise Realty* nor subsequent cases on the point are authority for the proposition that once fair value has been determined, the court is precluded from considering whether the assessment based on that evaluation is proper.

The assessment of real property is done by two different stages, evaluation and then assessment. Both the *Enterprise Realty* and the *Markarian*[2] cases speak to the method of computing the fair value of the property in question; neither case is authority for the proposition that the sale price of one piece of property can be used to greatly increase its assessment while using a much lower valuation for other comparable property which has not had a recent sale.

Under the rule of uniformity, the appellant should be allowed, as here, to demonstrate that, despite the fact that he has paid a fair price for the property, the assessments of comparable property were significantly lower

[1] (1955), 269 Wis. 642, 645, 70 N. W. 2d 34.

[2] *State ex rel. Markarian v. Cudahy* (1970), 45 Wis. 2d 683, 686, 173 N. W. 2d 627.

and that this amounted to a discriminatory assessment of this property.

The rule of uniform taxation as embodied in art. VIII, sec. 1, of the Wisconsin Constitution, was first stated by this court in 1859 in *Knowlton v. Supervisors of Rock County:* [3]

". . . when property is the object of taxation, it should all alike, in proportion to its value, contribute towards paying the expense of such benefits and protection. These are plain and obvious propositions of equity and justice, sustained as we believe by the very letter and spirit of the constitution. Its mandate, it is true, is very brief, but long enough for all practical purposes; long enough to embrace within it clearly and concisely the doctrine which the framers intended to establish, viz: that of equality. 'The rule of taxation shall be uniform,' that is to say, the course or mode of proceeding in levying or laying taxes shall be uniform; it shall in all cases be alike. The act of laying a tax on property consists of several distinct steps, such as the assessment or fixing of its value, the establishing of the rate, etc.; and in order to have the rule or course of proceeding uniform, each step taken must be uniform. The valuation must be uniform, the rate must be uniform. Thus uniformity in such a proceeding becomes equality; and there can be no uniform rule which is not at the same time an equal rule, operating alike upon all the taxable property throughout the territorial limits of the state, municipality or local subdivision of the government, within and for which the tax is to be raised."

This proposition has repeatedly been followed over the years and still represents the proper interpretation of this constitutional provision.[4] It is required that all property within a class "must be taxed on a basis of equality as far as practicable." [5]

---

[3] (1859), 9 Wis. 378, 388, 389 (*410, *420, *421).

[4] *Gottlieb v. Milwaukee* (1967), 33 Wis. 2d 408, 418, 419, 147 N. W. 2d 633; *State ex rel. Boostrom v. Board of Review* (1969), 42 Wis. 2d 149, 158, 166 N. W. 2d 184.

[5] *Gottlieb v. Milwaukee, supra,* footnote 4, at page 424.

There can be no doubt that under this constitutional provision, and indeed under the equal protection clause of the fourteenth amendment to the federal constitution,[6] the court must determine not only that the assessment is based upon fair market value of the real estate, but also that the assessment does not discriminate against a property owner even though his property has been acquired at a recent sale.

The factual record in this case was completely developed before the town review board. The board took evidence relating to the comparable value of other property in the area. Thus while the trial court affirmed the review board on too narrow a basis, there is still a full evidentiary record on the issue of comparable value to allow this court to review the record and determine if the evidence supports the trial court's determination.[7]

The 4.6 western acres of appellant's land are assessed at a rate in excess of $1,000 per acre, while the eastern 5.6 acres are assessed at the rate of $200 per acre. The entire parcel is agricultural land actually used for farming (both before and after the recent sale), although the western 4.6 acres are zoned for commercial use. The trial court, in reviewing the same evidence as it relates to the 1968 assessment, found that the land involved in this case was disproportionately assessed because of its zoning. It should be noted, however, that other farm land not assessed at this high rate was also commercially zoned.

Sec. 70.32 (2) (b), Stats., provides the method in which a town assessor shall classify real property:

[6] *Cf. Allied Stores of Ohio v. Bowers* (1959), 358 U. S. 522, 79 Sup. Ct. 437, 3 L. Ed. 2d 480.

[7] *Cf. Mueller v. Mizia* (1967), 33 Wis. 2d 311, 318, 147 N. W. 2d 269.

"(2) The assessor, having fixed a value, shall enter the same opposite the proper tract or lot in the assessment roll, following the instruction prescribed therein.

"...

"(b) In towns, he shall segregate into the following classes on the basis of use and set down separately in proper columns the acreage and the value of the parts of land, exclusive of improvements, and the improvements which fall within each class:

"A. Residential,
"B. Mercantile,
"C. Manufacturing,
"D. Agricultural,
"E. Swamp, or waste,
"F. 1. Productive forest land,
"F. 2. Nonproductive forest land."

Appellant contends that this statute prohibits the assessor from considering the zoning of the property when it is used for some other purpose. Quite clearly, the provisions of par. (b) do not apply until the assessor has "fixed a value." Thus the word "use" in par. (b) applies to the requirement of classifying the land, not to determining its evaluation.

As we have noted, the precise question in this case is not how the land was evaluated—that was based on the 1969 sale—but how the property was assessed once the evaluation was made. How were other lands of comparable location, zoning and use assessed? Extensive evidence was produced before the review board that shows beyond any question that other land which was used for farming was located in the same area, and that some of this land had the same zoning as appellant's land yet it was assessed at between $80 and $400 an acre as compared with the assessment of part of appellant's land at the rate of $1,000 an acre. True, "[a] taxpayer has no complaint when a valuation which could ordinarily be obtained therefor at private sale is placed upon his property, unless there is such a general undervaluation of the other property of the assessment dis-

trict as will result in an excessive tax as to him." [8]
Whereas in *Walthers* the comparison of the taxpayer's
property was made with other property constituting
less than two percent of the property in the assessment
district, the comparison here is of a much larger per-
centage. The record does not support the assertion of
respondent that the comparison sampling was selective.
There is no question but what other comparable lands
in the immediate area were not assessed at anything
like a comparable figure. While respondent asserts that
the land was so highly assessed because it was a smaller
parcel that was close to a schcol, other land was in this
small an area and near the school, yet was assessed at
only 1/10th the rate of this property. [9] There is no
question that the assessment was improperly made and
in violation of the rule of uniformity. The fundamental
equity of the entire real estate property tax system is
based on the fairness of the assessment procedures, both
as to the evaluation and the subsequent assessment. What
Mr. Chief Justice EDWARD G. RYAN early said, must still
be the rule:

"[T]he exercise of the taxing power must be upon a
uniform rule; and it is only upon an equal assessment,
as the foundation of uniform apportionment, that the
taxing power can be put in operation." [10]

Because of the failure to follow the rule of uniformity,
we are satisfied that the assessment for 1969 was beyond

[8] *State ex rel. Walthers v. Jung* (1921), 175 Wis. 58, 61, 183
N. W. 986.
[9] *See* the *1969 Statistical Report of Property Values* as to She-
boygan County, Wisconsin, and particularly the town of Wilson,
wherein the average evaluation per acre in the town of Wilson
was $106 per acre, approximately 1/10th the evaluation of the 4.6
western acres of appellant.
[10] *Marsh v. Supervisors of Clark County* (1877), 42 Wis. 502,
509.

the jurisdiction of the review board and must be set aside.[11]

*By the Court.*—Order reversed and cause remanded with directions to set aside the 1969 property tax assessment.

[11] *State ex rel. Boostrom v. Board of Review, supra,* footnote 4. *See also: Marsh v. Supervisors of Clark County, supra,* footnote 10.