STATE of Wisconsin, EX REL., ALGOMA HOUS-
ING COMPANY, Petitioner-Respondent,†

v.

BOARD OF REVIEW and Thomas Romdenne, Clerk
of the City of Algoma, Respondents-Appellants.

Court of Appeals

*No. 91-0841. Submitted on briefs October 21, 1991.—Decided
November 26, 1991.*

(Also reported in 480 N.W.2d 786.)

†Petition to review denied.

676

■■■

■■■

■■■

On behalf of the respondents-appellants, the cause was submitted on the briefs of *Dennis M. Grzezinski* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James L. Evans* of *Miller, Blazkovec & Evans* of Algoma.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.  The board of review and the city of Algoma appeal a judgment reversing the 1990 tax assessment of the Algoma Housing Company's Seagull Apartments, federally subsidized low-income housing. The property had rent restrictions imposed on it by the United States Department of Housing and Urban Development because it was subsidized housing. The board contends that the trial court erroneously determined the property's fair market value for assessment purposes to be the purchase price of the real estate minus the value of rental restrictions. Because the restrictions on rent represent a limitation on income that is a factor considered when a purchaser buys a property, we conclude that the price determined by an arms-length transaction represents the value of the property for tax assessment purposes. Accordingly, we affirm that portion of the trial

677

court's judgment that concluded the assessment was determined inappropriately, but reverse that portion of the trial court's judgment that directs the assessment be reduced by the amount representing the value of the rental restrictions placed on this property.

In November 1989, the Algoma Housing Company purchased the Seagull Apartments for $953,719.83. This property consists of four apartment buildings developed pursuant to a long-term agreement with HUD. The property is subsidized as section eight low-income housing. It is undisputed that the purchase price included $50,000 of personalty, $15,700 value for a cash deferral payment and $210,836 in low-income housing credits. Thus, the portion of the purchase price attributable to the real estate was $677,183.83.

The assessor determined the property's assessed value to be $702,200. He reached this figure by using a combination of assessment methods. The board accepted the assessor's figure. The company petitioned the trial court for certiorari review of this figure. Subsequent to the company's petition for certiorari, the Algoma city council directed the assessor to lower the assessment to $677,183.83.

The trial court determined the city council's belated action to be ineffective. Therefore, on review, the trial court only considered whether the board of review erred by affirming the assessment of $702,200. The court concluded that the board did not act according to law because it affirmed an assessment made by improper assessment methods. The court, therefore, reversed the board and directed it to set an assessment that took into account not only the personalty, cash deferral value, and low income housing credits, but also the $200,000 the company attributed to the reduction of the properties' fair market value because of the rental restrictions.

The methodology for reviewing the board of review's action is set forth in *Mitchell Aero v. Board of Review,* 74 Wis. 2d 268, 281–82, 246 N.W.2d 521, 528 (1976), and need not be repeated here. We agree with the trial court that because the assessor did not use the value of the real estate determined by an arms-length sale, the assessment was improper. The court properly determined that the assessor's method of assessment was erroneous and not according to law.

The remaining issue presented is whether, for tax assessment purposes, the deductions from the total purchase price of real property in an arms-length transaction include the limitations on rents that can be charged as a result of HUD restrictions on subsidized low-income housing. Whether restrictions on rents is a proper deduction from a purchase price in an arms-length transaction for assessment purposes is a question of law. *See generally Darcel, Inc. v. Manitowoc Review Bd.,* 137 Wis. 2d 623, 405 N.W.2d 344 (1987). We review questions of law de novo. *Barber v. Nylund,* 158 Wis. 2d 192, 195, 461 N.W.2d 809, 811 (Ct. App. 1990).

Because income is a major factor in determining the purchase price of real estate in an arms-length purchase of rental property, we conclude that the rental restrictions are reflected in the purchase price and, therefore, are not to be deducted from the purchase price for assessment purposes. Further, because the components of the purchase price and their values are undisputed in this case, we can also determine the value of the real estate for assessment purposes as a matter of law. *See Doe v. Roe,* 151 Wis. 2d 366, 373, 444 N.W.2d 437, 441 (Ct. App. 1989).

679

The Wisconsin Supreme Court addressed a similar issue in *Darcel,* where a shopping mall, despite its recent sale, was assessed much higher than the purchase price. The assessor argued that the existence of long-term leases rented below market value deflated the purchase price and, because the property was worth more than the purchase price, it should be assessed according to the higher value. The court rejected this argument, stating:

> It is immaterial that the lease was a detriment to the property; it was transferred to the new mall owners, and its value was reflected in the sales price of the property. Thus, the sale was an arms-length transaction and clearly the best evidence of the "full value" of the property.

*Id.* at 628, 405 N.W.2d at 346.

The *Darcel* court also reaffirmed its holding in *State ex rel. Geipel v. Milwaukee,* 68 Wis. 2d 726, 737, 229 N.W.2d 585, 590–91 (1975), that it is error for an assessor to use other methods to assess the value of property where there has been a recent arms-length sale. *Darcel,* 137 Wis. 2d at 629, 405 N.W.2d at 347. It is not contested that the sale of the apartments was an arms-length transaction. The company argues that despite the arms-length sale, the limits on rent that it can obtain due to the HUD restrictions is an amount that should be deducted from the purchase price for assessment purposes.

The only difference between this case and *Darcel* is that instead of the assessor trying to increase the assessment due to the restrictions, the property owner is attempting to lower the assessed value based on the restrictions. Essentially, the company argues that it paid more than fair market value for the apartments. It asks

us to acknowledge this mistake by decreasing the tax assessment. Such action is not allowed under *Darcel*.

Attempting to support its position, the company cites provisions of the Wisconsin Property Assessment Manual pertaining to the assessment value of low-income housing. These provisions, however, are warnings to assessors that a sale of low-income housing property may not represent full market value because such sales are often of a "distressed nature." Thus, the manual warns that if the sale is distressed, the actual market value of the property will be higher than the sale price, not lower as asserted by the company.

We conclude that the purchase price is the best indicator of fair market value. The figures representing the total purchase price and the allowable deductions are undisputed. We therefore determine, as a matter of law, that the apartments' value for assessment purposes is $677,183.83. Any other assessment value is unsupported by the facts, is arbitrary and not based on law. Although we affirm the trial court's setting aside the board's assessment, we must reverse the trial court's determination of value and order the assessment to be set at $677,183.83. We note that this is the same amount set by the city council.

The company further challenges the assessment, claiming that it violates the uniformity requirement in the Wisconsin Constitution. The Wisconsin Constitution requires in art. VIII, sec. 1 that: "The rule of taxation shall be uniform." Uniformity does not require equal assessment per square foot of all apartment buildings within a certain area. Uniformity requires that the evaluation and the rate of assessment of all properties be

uniform. *State ex rel. Hensel v. Town of Wilson,* 55 Wis. 2d 101, 106, 197 N.W.2d 794, 796 (1972).

All properties in Algoma are assessed on the basis of their full market value. The apartments were also assessed on the basis of full market value determined by an arms-length sale. Thus, unless the company can demonstrate a general undervaluation of properties within the district, the uniformity requirement is not violated. *State ex rel. Walthers v. Jung,* 175 Wis. 58, 61, 183 N.W. 986, 987 (1921).

To support its contention that the assessment violates the uniformity requirement, the company compares the assessment per square foot of its property to the value assigned per square foot to two allegedly comparable pieces of property. In *Walthers,* our supreme court addressed a similar argument. The taxpayer contended that his property was overvalued. To support his contention, the taxpayer compared his property to other properties that represented a mere 2% of the district's property.

The court, concluding that the taxpayer did not meet his burden of demonstrating general undervaluation within the district, stated:

> Such a showing does not negative the possibility that, as compared with the other ninety-eight percent, his property may be valued too low, and falls far short of convincing proof that the valuation placed upon his property will result in an unjust tax upon him. A taxpayer has no complaint when a valuation which could ordinarily be obtained therefor at private sale is placed upon his property, unless there is such a general undervaluation of the other property of the assessment district as will result in an excessive tax

as to him. Such a situation is not shown by proof which compares the valuation of a taxpayer's property with less than two percent of the other property in the assessment district . . ..

*Id.* Here, by comparing the assessment values of only two properties to its own, the company has not demonstrated general undervaluation in the district.

Moreover, as recently as *Darcel,* the supreme court denounced the practice of attempting to compare another property to the assessed property when there has been a recent sale of the assessed property. It stated: "Any comparative information about other shopping malls would be, at best, speculative, and at worst, totally subjective." *Darcel,* 137 Wis. 2d at 630, 405 N.W.2d at 347. We conclude that the company has not proven a violation of the uniformity requirement by comparing its property to two smaller buildings across the street from its property.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions. Costs to appellant.