STATE of Wisconsin EX REL. Robert A. LEVINE, Ileen K. Levine, Russell Yale and Susan Yale, Petitioners-Respondents-Petitioners,

v.

BOARD OF REVIEW OF the VILLAGE OF FOX POINT, Respondent-Appellant.

Supreme Court

*No. 93–0249. Oral argument January 11, 1995.—Decided March 14, 1995.*

(Also reported in 528 N.W.2d 424.)

For the petitioners-respondents-petitioners there were briefs by *Robert A. Levine, Mia Sefarbi* and *Levine, Epstein & Kohler,* Milwaukee and oral argument by *Robert A. Levine.*

For the respondent-appellant there was a brief and oral argument by *Carl W. Backus,* Milwaukee.

Amicus curiae brief was filed by *Claire Silverman,* assistant legal counsel, for the League of Wisconsin Municipalities.

STEINMETZ, J. One issue is before this court: under *State ex rel. Walthers v. Jung,* 175 Wis. 58, 183 N.W. 986 (1921), do taxpayers whose properties are assessed at fair market value have a right to have their properties reassessed when they show that improper considerations resulted in an underassessment of other

properties in the district? We hold that taxpayers are entitled to have their properties reassessed when they show that improper considerations resulted in the underassessment of other properties in the district, even if they do not show that at least two percent of the other properties were underassessed.

The petitioners, the Levines and the Yales, own separate residential properties in the village of Fox Point. The Levines' home was built in 1986. The Yales' home was built in 1983. They both filed objections to their 1990 real estate property tax assessments and appeared before the Fox Point Board of Review (the board). They both argued to the board that the rule of uniformity[1] had been violated because, while their "newer" properties were assessed at or above fair market value, older but comparable properties in the tax district were assessed at substantially less than fair market value, thereby burdening the Levines and the Yales with a disproportionately high tax in relation to other Fox Point homeowners.

The board concluded that the Levines and the Yales failed to demonstrate that the rule of uniformity had been violated. However, the board found that the Yales' land had been erroneously assessed and reduced their 1990 land assessment by $40,000 to reflect the property's lack of a lake view. The board did not reduce the 1990 assessed value of improvements to the Yales' land, nor did it give any reasons for not reducing the assessed value of the improvements. Both taxpayers petitioned the circuit court for a writ of certiorari.

---

[1] The rule of uniformity is embodied in Art. VIII, sec. 1, of the Wisconsin Constitution, which requires that the method or mode of taxing real property must be applied uniformly to all classes of property. *State ex rel. Hensel v. Town of Wilson,* 55 Wis. 2d 101, 106, 197 N.W.2d 794 (1971).

Before the circuit court heard their 1990 objections, the Levines and the Yales filed similar objections to their 1991 real estate property tax assessments. They both appeared before the board and presented evidence that four separate homes in the tax district were sold in 1990, and that a prospective buyer had made an offer to buy another home in the tax district. The sale prices of the properties were significantly higher than their assessed value.[2]

The board asked the village assessor to explain why certain homes were assessed at less than their sales price. The assessor testified that he did not rely on sale prices to determine the fair market value of certain older homes because, in his opinion, the purchasers of those homes were overpaying. The assessor further testified that although he uses a variety of factors in assessing property, his assessment methodology is "arbitrary."

The board concluded that the 1991 objections filed by the Levines and the Yales failed to demonstrate that the rule of uniformity had been violated. However, based on the lack of a lake view, the board reduced by $45,100 the 1991 assessed value of the improvements to the Yales' land. Given this reduction, the Yales contend, in addition to their rule of uniformity argument,

---

[2] One property sold for $626,000, while its assessed value was $488,000. Another sold for $615,000, while its assessed value was $533,400. Another sold for $383,000, while its assessed value was $290,000. Another sold for $480,000, while its assessed value was $412,000. With respect to the pending sale, the owner of the property received an offer in excess of $1,000,000, while the property was assessed at $681,000. Thus, certain older properties were assessed at an amount between 13 and 32 percent below their fair market value, resulting in underassessments ranging from $68,000 to $319,000.

that their 1990 improvements assessment should also have been reduced for lack of a lake view. Both taxpayers again petitioned the circuit court for a writ of certiorari.

The Levines' and the Yales' 1990 and 1991 objections were consolidated for purposes of review.[3] The Milwaukee county circuit court, presided over in succession by the Honorable Joseph Callan and the Honorable Richard G. Harvey, Jr., reversed the board of review and remanded the assessments to the board to conduct further proceedings. The court concluded that the board acted inappropriately in approving the assessments, because the board and the assessor failed to consider relevant evidence, namely the sale prices of allegedly comparable properties. The court noted that the board had "totally discounted" evidence presented by the taxpayers showing that reasonably comparable properties were assessed at less than their fair market value. The board appealed from the decision.

In an unpublished opinion, a divided court of appeals reversed the order of the circuit court.[4] Based on language in *Walthers,* the court of appeals held that taxpayers whose properties are assessed at fair market value, but who object to their assessments on the ground that other property in the district is underassessed, must present evidence establishing that at least two percent of the other properties in the tax

---

[3] In these consolidated proceedings, the circuit court also addressed a similar objection filed by Allen and Michelle Babbitz. The village of Fox Point, however, did not appeal from the circuit court's decision regarding their assessment. Therefore, they are not parties to the appeal before this court.

[4] Judge Sullivan authored the majority opinion, Judge Fine authored a concurrence, and Judge Schudson authored a dissent.

district were underassessed.[5] According to the court of appeals, if taxpayers fail to satisfy this rule of law, their claims must be dismissed. Thus, the court opined, any evidence presented by taxpayers is irrelevant unless they first show that at least two percent of the other properties in the tax district were underassessed. The Levines and the Yales petitioned this court for review, which was granted. We now reverse the decision of the court of appeals.

Our scope of review on certiorari is the same as that of the circuit court. *Steenberg v. Town of Oakfield,* 167 Wis. 2d 566, 571, 482 N.W.2d 326, 327 (1992). Hence, our review is limited to whether the board kept within its jurisdiction, whether it acted according to law, whether it acted arbitrarily or in bad faith, and whether the evidence before the board could reasonably sustain the assessment. *Metro. Holding v. Milwaukee Review Bd.,* 173 Wis. 2d 626, 630, 495 N.W.2d 314, 316 (1993). We note that it is not the function of this court to order that an assessment be entered at any fixed sum. *Rosen v. Milwaukee,* 72 Wis. 2d 653, 661, 242 N.W.2d 681 (1976). Rather, the function of this court in reviewing an assessment case is to determine, from the evidence presented to the board of review, whether the assessment was made on the statutory basis. *Id.*

The petitioners' theory is that the board of review acted arbitrarily in upholding their assessments in light of the evidence that the assessor used improper

---

[5] The court of appeals did not clarify whether it based its decision on the taxpayers' failure to show that the assessments of comparable properties constituted less than two percent of the tax levy or whether the comparable properties represented less than two percent of the lots in the village of Fox Point.

factors in assessing other properties in the tax district and, therefore, failed to assess pursuant to sec. 70.32(1), Stats. The petitioners argue, as they did before the circuit court and court of appeals, that while their newly constructed properties were assessed at fair market value, comparable older properties were assessed at less than fair market value, resulting in their paying more than their proportionate amount of property tax. The petitioners urge this court to set aside the discriminatory assessment of their properties and order the board to bring the amount of their assessments into conformity with the lesser assessed value of the older comparable properties.

Article VIII, sec. 1, of the Wisconsin Constitution[6] requires that the method or mode of taxing real property must be applied uniformly to all classes of property within the tax district. *State ex rel. Hensel v. Town of Wilson*, 55 Wis. 2d 101, 106, 197 N.W.2d 794 (1971). Under this principle known as the rule of uniformity, taxpayers may demonstrate that although their properties were assessed at fair market value, other comparable properties were assessed signifi-

---

[6] Wis. Const. Art. VIII, sec. 1 provides in part: "The rule of taxation shall be uniform . . . ." This court's interpretation of the rule of uniformity is longstanding and consistent.

> Its mandate . . . is very brief, but long enough . . . to embrace within its clearly and concisely the doctrine . . . of equality. 'The rule of taxation shall be uniform,' that is to say, the course or mode of proceeding . . . shall be uniform; it shall in all cases be alike. The act of laying a tax on property consists of several distinct steps, such as the assessment or fixing of its value, the establishing of the rate, etc.; and in order to have the rule or course of proceeding uniform, each step taken must be uniform.

*Knowlton v. Supervisors of Rock County*, 9 Wis. 378, 389 [*410] (1859).

cantly below fair market value, thus amounting to a discriminatory assessment of their property. *See id.* at 105–06. For example, the general underassessment of older properties would constitute discrimination against purchasers of newer properties and, therefore, would violate the uniformity clause of the Wisconsin Constitution. *See Flood v. Lomira Board of Review,* 149 Wis. 2d 220, 228, 440 N.W.2d 575 (Ct. App. 1989).

Section 70.32(1), Stats.,[7] seeks to ensure a uniform method of taxation by requiring assessors to assess real estate at its fair market value, using the "best information" that the assessor can practicably obtain. *See Flood,* 149 Wis. 2d at 226; *see also The Property Assessment Manual for Wisconsin Assessors,* Vol. 1, Part 2, Ch. 18, p. 11 (1987). Fair market value is commonly defined as the amount the property could be sold for in the open market by an owner willing and able but not compelled to sell to a purchaser willing and able but not obliged to buy. *State ex rel. Kesselman v. Sturtevant,* 133 Wis. 2d 122, 128, 394 N.W.2d 745 (Ct. App. 1986) (citing *State ex rel. Markarian v. Cudahy,* 45 Wis. 2d 683, 685, 173 N.W.2d 627 (1970)).

---

[7] Section 70.32(1), Stats., provides:

Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

> The 'best information' of such [fair market] value is a sale of the property or, if there has been no such sale, then the sales of reasonably comparable property. In the absence of such sales, the assessor may consider all the factors collectively which have a bearing on value of the property in order to determine its fair market value. However, it is error to use this method 'when the market value is established by a fair sale of the property in question or like property.'

*Markarian,* 45 Wis. 2d at 685 (citations omitted).

Thus, "the assessor *must* assess property recently involved in an arms-length sale at its purchase price." *Flood,* 149 Wis. 2d at 227 (emphasis in original) (citing *Darcel v. Manitowoc Review Bd.,* 137 Wis. 2d 623, 629, 405 N.W.2d 344 (1987)). The use of other means to assess the value of property in the presence of an arms-length sale violates sec. 70.32(1), Stats., and thus constitutes an error of law, which this court may correct on certiorari. *See Markarian,* 45 Wis. 2d at 685; *Kesselman,* 133 Wis. 2d at 127.

In the instant case, the assessor open admitted that he did not rely on sale prices to determine the fair market value of certain older properties.[8] Instead, he discounted the sale prices of the older properties because, in his opinion, the purchasers were overpaying for these properties. Furthermore, the assessor admitted that his method of assessment was "arbitrary" and that it resulted in certain older homes being assessed at a dramatically lower amount than they were traded for on the open market. We conclude that

---

[8] The·assessor went as far as to say that "[c]ost has nothing to do with what you're looking at in [assessing these] homes."

the assessor clearly failed to use the best information available when he ignored the purchase price of certain older properties in assessing their value. By using arbitrary and improper considerations in making the assessment, the assessor violated sec. 70.32(1), Stats., and committed an error of law.

Relying on *Walthers,* the board argues that the assessor's use of improper considerations and concomitant failure to follow the statute is irrelevant because the petitioners failed to show that at least two percent of the other properties in the tax district were underassessed. We disagree with this interpretation of *Walthers.* In *Walthers,* the taxpayer argued that the assessed value of his property was too high relative to the values placed on certain other properties in the tax district. *Id.* at 60. The only evidence that the taxpayer presented in support of his argument was testimony that nine other properties in the tax district were assessed at a lower value than his own. The taxpayer did not present any evidence that the assessor used an arbitrary methodology or that improper considerations influenced the valuation. Nor did the taxpayer present any evidence that the properties presented were assessed below fair market value or that they were in fact comparable. The taxpayer simply took the position that his property was overvalued because nine other properties were assessed at a lower amount than his property. Within this context, the *Walthers* court stated:

> This raises the question whether a taxpayer may impeach an assessor's valuation of his property by comparing such valuation with less than two per cent of the descriptions in the assessment district, and testimony that, as compared with such descriptions, the assessed value placed on his land is too

374

high. If this be true, assessments have a precarious stability, because common knowledge informs us that the average taxpayer can conscientiously testify that his holdings are valued too high in comparison with that of certain of his neighbors. . . . A taxpayer has no complaint when a valuation which could ordinarily be obtained therefore at private sale is placed upon his property, unless there is such a general undervaluation of the other property of the assessment district as will result in an excessive tax as to him. Such a situation is not shown by proof which compares the valuation of a taxpayer's property with less than two percent of the other property in the assessment district, unless it appears that improper considerations influenced the valuation of the objector's property.

Id. at 60–61.

The *Walthers* court sought to prevent taxpayers from selectively picking a few low comparison assessments and then complaining that their property was overassessed. *See Hensel,* 55 Wis. 2d at 109; *see also The Property Assessment Manual for Wisconsin Assessors,* Vol. 1, Part 2, Ch. 18, p. 11 (1987). The court did not seek to deter taxpayers from complaining when the taxing authority violates the rule of uniformity by approving an arbitrary method of assessment that entails the use of improper considerations. Moreover, the *Walthers* court did not seek to establish a bright-line two percent rule for determining whether taxpayers have met their evidentiary burden. Such a rigid rule would place an onerous burden on taxpayers who live in populous tax districts. Even in a relatively small district, the financial burden could be overwhelming. The *Walthers* court used the two percent figure simply as a means of underscoring the inadequacy of the evidence presented by the complaining taxpayer in that

case. The two percent figure mentioned in *Walthers* is tied to the facts of that case; it is not an evidentiary rule of law.

We reiterate that the Levines and the Yales introduced ample evidence that improper considerations influenced the valuation of older properties in the tax district. Specifically, they presented uncontroverted evidence that instead of using sale prices to determine the fair market value of certain older homes, the assessor ignored the mandate of sec. 70.32, Stats., and used an arbitrary assessment methodology that entailed improper considerations.

Nevertheless, the board maintains that the petitioners were required to demonstrate that at least two percent of the other property in the district was underassessed, because the language in *Walthers* requires the objecting taxpayer to show that improper considerations influenced the valuation of "the objector's property." *Id.* The board points out that although the petitioners have shown that improper considerations influenced the valuation of older properties in the district, they have failed to show that improper considerations influenced the valuation of their own properties.

The board would have this court view taxpayers' assessments in a vacuum. However, doing so would deprive taxpayers of their constitutional right to show that although their properties were assessed at fair market value, the assessments of comparable properties were significantly lower, thus amounting to a discriminatory assessment of the complaining taxpayers' properties. *See Hensel,* 55 Wis. 2d at 105–06. As the United States Supreme Court recently stated, "the fairness of one's allocable share of the total property tax burden can only be meaningfully evaluated by com-

376

parison with the share of others similarly situated relative to their property holdings." *Allegheny Pittsburgh Coal v. Webster County,* 488 U.S. 336, 346 (1989). Thus, we conclude that the *Walthers* court was referring to the limited facts before it in referring to "the objector's property."[9]

In summary, we conclude that the Levines and the Yales satisfied their evidentiary burden by providing uncontroverted evidence that the assessor ignored purchase prices and used arbitrary and improper considerations in assessing other properties in the tax district. In short, the assessor failed to assess in the manner required by sec. 70.43(1), Stats. By disregarding the petitioners' evidence that the assessor failed to follow the statute, the board acted arbitrarily in reviewing and approving the assessments.

The difficulty in this case is to craft a remedy for the petitioners. It is not feasible to order a remedy that satisfies both the constitutional mandate of uniformity and the statutory requirement that real property be assessed at full value. To satisfy the statutory requirement, the board would need to reassess all real property in the district at their full values in the years

---

[9] Dissenting in the case at bar, Judge Schudson recognized that assessments cannot be viewed in isolation. He stated:

> [A] determination of the lawfulness of assessments necessarily comes not only through review of whether improper considerations influenced the valuation of the *objector's* property, but also, through review of whether improper considerations influenced the valuation of other properties resulting, in turn, in a valuation of the objector's property that was not uniform.

(Emphasis in original.) Judge Schudson further opined that the taxpayers meet their evidentiary burden under *Walthers* by showing that the use of improper factors by the assessor effected the valuation of comparable, older properties in the tax district.

1990 and 1991. Assessing the full value of real property that has not been sold in recent years is difficult at best, but calculating the past value of such property is a task too costly and burdensome to impose on the board. Additionally, the court was advised at oral argument that the board is currently undertaking a reassessment of all properties for future use.

We opt to satisfy the constitutional mandate of uniformity, as the petitioners request, despite the fact that doing so compels the board to act at odds with the statute. The only practical means of bringing the petitioners' assessments in compliance with the constitution and providing the petitioners with relief is to order the board to reassess the petitioners' real property to harmonize those values with the lesser assessed values of the older comparable properties. Accordingly, to ensure uniformity, the case is remanded to the board for further proceedings. We direct the board to reassess the Levines' and the Yales' properties to bring the amount of their assessments into conformity with the assessments of the older comparable properties for the years 1990 and 1991.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded.