# COURT OF APPEALS
## DECISION
## DATED AND FILED

## September 10, 2019

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1744**

STATE OF WISCONSIN

Cir. Ct. No. 2015CV5755

## IN COURT OF APPEALS
## DISTRICT I

WISCONSIN & MILWAUKEE HOTEL, LLC,

PLAINTIFF-APPELLANT,

V.

CITY OF MILWAUKEE,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: REBECCA F. DALLET, Judge. *Affirmed*.

Before Brash, P.J., Kessler and Gundrum, JJ.

¶1 KESSLER, J. Wisconsin & Milwaukee Hotel, LLC (WMH) appeals an order of the circuit court, following a court trial, upholding the City of Milwaukee's 2014 and 2015 property tax assessments of the Milwaukee Marriott Hotel Downtown (the Hotel) located in downtown Milwaukee. WMH contends

that the City Assessor's method of determining the Hotel's fair market value violated both the *Wisconsin Property Assessment Manual*[1] and the Uniformity Clause of the Wisconsin Constitution. We affirm.

## BACKGROUND

¶2 WMH owns and operates the Milwaukee Marriott Downtown, classified as an "upper-upscale,"[2] full service hotel with 205 guest rooms. The Hotel has been in operation since mid-2013. For the year 2014, the City Assessor valued the Hotel at $24 million.[3] WMH appealed the assessment to the City's Board of Review, which upheld the $24 million assessment. WMH filed the action underlying this appeal. While the matter was pending, the City Assessor issued its 2015 assessment of the Hotel, determining the fair market value to be $37,362,000. WMH again appealed the assessment to the Board of Review, which again upheld the City's determination. WMH filed an amended complaint adding its challenge to the City's 2015 assessment. The matter proceeded to trial.

¶3 Gail Kern, the City Assessor who conducted the assessment of the Hotel, testified in great detail at trial about the method she used to determine the Hotel's fair market value. She testified that she generally uses "the Rushmore Approach" when valuating hotels. That method is an income-based method that values a hotel based on the income it generates. Kern explained that the approach

---

[1] Hereinafter also referred to as either the "*Property Assessment Manual*," or the "assessment manual."

[2] The hotel classification scale is as follows: luxury, upper-upscale, upper-midscale, midscale, and economy.

[3] Assessments are based on a property's value as of January 1st of the assessment year. *See* https://city.milwaukee.gov/assessor#.XTdFI-tKhhE (last visited Sept. 5, 2019).

involves calculating a hotel's net operating income, which is determined by subtracting a hotel's expenses from its revenue. Certain factors not attributable to the real estate are deducted from the net operating income so that only the income attributable to the real estate is used to calculate fair market value.[4] The net operating income is then divided by the capitalization rate, resulting in the fair market value. Kern testified that each hotel in Milwaukee, with certain exceptions, is assessed in this manner.

¶4     Kern explained that she begins the annual hotel assessment process by requesting income and expense information from Milwaukee hotels. She then analyzes the data and compares it to previous years. She stated that the financial information the hotels provide, if plotted on a chart, would resemble a bell curve. Income and expense information falling within the bell curve are considered "market value." The data provided by the hotels is then used to calculate their fair market values. Income and expense information which falls outside of the bell curve is not used to determine the fair market value of the hotel that provided the information.

¶5     Kern testified that she requested the Marriott's 2013 income and expense information to determine the 2014 assessment. The Marriott did not timely respond. Kern testified that she then used the best information available to her to determine the Hotel's net operating income. This included the Hotel's advertised room rate, the number of rooms available, an assumed occupancy rate based on the downtown market, and an expense rate also based on information

---

[4] Examples of factors not attributable to the real estate include business components such as franchising fees and management fees, as well as personal property such as furniture and fixtures.

available about other area hotels of the same class. The net operating income was then capitalized at the same rate as other comparable hotels in Milwaukee, resulting in a value of $24 million.

¶6    For the 2015 assessment, the City received the Marriott's 2014 income and expense information and used that information to value the property. Kern valued the Hotel at $37,362,000. Kern also testified that neither assessment violates the Uniformity Clause because she assessed other hotels of a similar class at fair market value using the same methodology she applied to the Marriott. In other words, Kern used actual income and expense data from each hotel to calculate the fair market value.

¶7    WMH's position at trial was essentially that the City violated the Uniformity Clause of the Wisconsin Constitution by using the Marriott's actual income and expenses to determine its fair market value, making its assessment inconsistent with the assessments of comparable hotels. To support its position, WMH called Bradley Braemer, a certified appraiser, who conducted an analysis comparing the Marriott to three other luxury or upper-upscale downtown Milwaukee hotels.[5] Braemer stated that he had no opinion of fair market value for any hotel property in Milwaukee and therefore could not definitely say whether the Marriott was actually assessed at fair market value.

¶8    Nonetheless, Braemer opined that the Marriott's assessment was not "uniform" with the other hotels because the Marriott's value per room did not match up with the values per room of the other hotels. Braemer said that he first

---

[5] The analysis was limited to the 2015 assessment.

4

compared the value per room of the Marriott with the value per room of the other hotels and found the Marriott's value per room was higher than the other hotels. Braemer then calculated the revenue per available room at each of the hotels, which is the computation of multiplying a hotel's average daily room rate by its occupancy rate. Braemer acknowledged that two hotels could be different but still have similar revenues per available room. Braemer also acknowledged that property attributes not related to the number of guest rooms, such as hotel restaurants and ballroom space, are not included in this calculation. Braemer stated that neither the revenue per available room comparison, nor the comparison of values per room, reveal anything about a hotel's real property characteristics, amenities, or outside income sources. Because Braemer calculated similar revenues per available room between the hotels, but dissimilar values per room, Braemer opined that "there were uniformity problems." Braemer admitted, however, that the comparisons are variables in determining fair market value and cannot solely be used to make a determination of fair market value. Braemer admitted that he did not review Wisconsin case law, Wisconsin statutes, the Wisconsin Constitution, or the *Wisconsin Property Assessment Manual* in reaching this opinion.

¶9     The City moved for directed verdict. The circuit court found that the City Assessor's assessment method did not violate either the *Wisconsin Property Assessment Manual* or case law. However, the court noted that WMH had compared its expenses only with three other hotels, all of which were owned by the same corporation. The court requested additional data on the market range of hotel incomes and expenses in Milwaukee so it could determine whether the Marriott's data "[fell] within that bell curve." The trial was adjourned.

¶10    When the trial resumed, Kern testified that she compiled market information using data from sixteen hotels in Milwaukee.[6]  One of Kern's exhibits showed the actual income and expense data from the hotels, along with other facts such as the hotels' age and ballroom space.  Another exhibit illustrated the bell curves for each category of revenue and expenses.  All of the Marriott's expense categories fell within market range, except one.[7]

¶11    In a written decision, the circuit court affirmed the City's 2014 and 2015 tax assessments, stating that it "is not persuaded that WMH has presented significant contrary evidence to show that the City's assessments were not uniform."  This appeal follows.

## DISCUSSION

¶12    On appeal WMH argues that the City's 2014 and 2015 assessments were "contrary to the dictates of the [*Wisconsin Property Assessment Manual*] and Wisconsin law" because the City Assessor relied on the Hotel's actual expenses rather than market expenses from comparable hotels.  WMH also argues that the assessments violated the Uniformity Clause of the Wisconsin Constitution.  We disagree.

---

[6] WMH already had data from twelve of the hotels.  Kern added four hotels to her analysis—three of which were outside the downtown area and near the airport.

[7] The category of income and expenses known as "replacement reserves" fell outside of market range.  Kern testified that this is not uncommon for newer hotels.

## I.    Legal Standards

¶13    The rules for real property assessment begin with WIS. STAT. § 70.32(1) (2017-18),[8] which provides in pertinent part:

> Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) ... at the full value which could ordinarily be obtained therefor at private sale.  In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed[;] ... recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

*Id.*  "This statute requires adherence to the *Wisconsin Property Assessment Manual for Wisconsin Assessors* … absent conflicting law." *Allright Props., Inc. v. City of Milwaukee*, 2009 WI App 46, ¶10, 317 Wis. 2d 228, 767 N.W.2d 567. "Thus, we analyze the applicable statutes 'in conjunction with basic principles of real property assessment as described by case law, treatises, and the *Property Assessment Manual.*'" *Id.* (citation omitted).

¶14    The *Wisconsin Property Assessment Manual* and case law set forth a three-tier assessment methodology to determine a property's full value.  *Adams Outdoor Advert., Ltd. v. City of Madison*, 2006 WI 104, ¶34, 294 Wis. 2d 441, 717 N.W.2d 803.  *Adams* explained:

> Evidence of an arm[']s-length sale of the subject property is the best evidence of true cash value.  [Tier 1] If there has been no recent sale of the subject property, an assessor must consider sales of reasonably comparable properties.  [Tier 2] Only if there has been no arm[']s-length sale and

---

[8] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

there are no reasonably comparable sales may an assessor
use any of the third-tier assessment methodologies. [Tier 3]

*Id.* (citations omitted).

¶15 Property owners may pursue actions to recover for excessive assessments under WIS. STAT. § 74.37(3)(d) after the owner receives notice that the taxation district has disallowed an excessive assessment claim. In reviewing assessment challenges, the circuit court begins with the presumption that the assessor has correctly assessed the subject property. WIS. STAT. § 70.49(2); ***Bonstores Realty One, LLC v. City of Wauwatosa***, 2013 WI App 131, ¶5, 351 Wis. 2d 439, 839 N.W.2d 893. However, the presumption of correctness no longer applies if the taxpayer presents significant contrary evidence to the circuit court or shows that the assessment does not apply the concepts delineated in the manual. ***Bonstores***, 351 Wis. 2d 439, ¶5. "Stated differently, when a city assessor correctly applies the *Property Assessment Manual* and Wisconsin Statutes, and there is no significant evidence to the contrary, courts will reject a party's challenge to the assessment." ***Allright Props.***, 317 Wis. 2d 228, ¶12.

¶16 On appeal, we defer to the circuit court's findings of fact unless those findings are clearly erroneous. *See **id.***, ¶13. However, we review *de novo* whether the assessments were adequately conducted in compliance with the applicable statutes and the manual, taking into account the "no significant evidence" standard referenced above. *See **id.***, ¶¶12-13 (citing ***Adams Outdoor Advert.***, 294 Wis. 2d 441, ¶26).

## II. The City Assessor's assessment methodology did not violate the *Wisconsin Property Assessment Manual* or Wisconsin Law.

¶17 In determining the value of commercial property, the *Property Assessment Manual* provides "[e]stimates of market value can be derived by using

the cost, income, or sales comparison approaches." *Wisconsin Property Assessment Manual,* 9-7*; see also* **Walgreen Co. v. City of Madison**, 2008 WI 80, ¶21, 311 Wis. 2d 158, 752 N.W.2d 687 (*Wisconsin Property Assessment Manual* recognizes three methods of property assessment). However, the manual notes that "[b]ecause buyers and sellers of commercial properties usually base their transaction decisions on the property's net operating income, the assessor must be thoroughly familiar with the income approach." *Wisconsin Property Assessment Manual,* 9-7. In short, the manual recognizes an income approach as both a viable and reliable method for hotel valuation.

¶18 Kern testified that under the assessment manual's three-tier hierarchy, an income-based approach, particularly the Rushmore Approach,[9] was the most appropriate method of valuating the Marriott. Kern stated that there was no recent sale of the property to use when determining the 2014 and 2015 assessments. She also stated that a sales comparison approach would not accurately represent the fair market value of the Marriott because other hotels sold in arm's length transactions had differences in age, space, amenities, location, and other features. Kern also testified that the City Assessor's Office does not necessarily take the income and expense information provided by hotels at face value. Kern stated that the data is analyzed based on the assessor's experience, the hotels' previous years of reporting, and market information. If the data provided falls outside of a bell curve of the market, the assessors conduct further investigations.

---

[9] As stated, the Rushmore Approach is an income-based approach which values a hotel based on the income it generates. The method takes a property's net operating income and capitalizes it into an estimate of value.

¶19    Kern's valuation method is consistent with Wisconsin assessment law.  Indeed, Wisconsin law recognizes that an income approach is appropriate where there are no arm's length transactions of the property and where a sales comparison approach is not available or reliable.  *See **Adams Outdoor Advert.**,* 294 Wis. 2d 441, ¶34.  The *Property Assessment Manual* also accounts for the unique consideration hotels require, noting that individual hotel characteristics vary widely, thus making a sales comparison approach "difficult to apply."  Specifically, with regard to hotels, the manual states:

> The use of the income approach for the valuation of hotels and motels is similar to its use for other types of properties in that the expenses are subtracted from the income to arrive at a net income figure which is capitalized into a market value estimate…. The assessor should be careful to make sure that only the real estate is being valued and not the quality of management or goodwill.  The comparable sales approach is difficult to apply to the valuation of this type of property because individual properties may differ greatly in services, reputation, age, and location all of which can affect value.  The cost approach can be used to estimate value but the assessor must be aware of the obsolete materials and styles used in construction of older hotels.

*Wisconsin Property Assessment Manual*, 9-44.

¶20    Accordingly, we agree with the circuit court that "the City Assessor's Office did not violate the Manual or case law when using the Rushmore approach to value hotels."  The circuit court's finding is supported by the evidence, including the court's assessment of the credibility of expert testimony.  *See generally **Walgreen**,* 311 Wis. 2d 158.

### III.    The Assessment did not Violate the Uniformity Clause.

¶21    WMH contends that the 2014 and 2015 assessments violate the Uniformity Clause because Kern "fail[ed] to determine the market expenses" in her assessments of the Marriott and other hotels.  WMH argues that Kern's use of the Marriott's actual expenses, rather than average expenses, resulted in the Marriott's tax burden being significantly higher than other downtown Milwaukee hotels of the same class.  WMH contends that the City Assessor violated the Uniformity Clause because the revenues per available room between the Marriott and three other similarly-classed hotels were similar, but the Marriott's assessed rate per room was higher than those three hotels.

¶22    Article VIII, section 1 of the Wisconsin Constitution provides in relevant part:  "The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods."  This provision "requires that the method or mode of taxing real property must be applied uniformly to all classes of property within the tax district." *State ex rel. Levine v. Board of Review of Village of Fox Point*, 191 Wis. 2d 363, 371, 528 N.W.2d 424 (1995).  "Under this principle known as the rule of uniformity, taxpayers may demonstrate that although their properties were assessed at fair market value, other comparable properties were assessed significantly below fair market value, thus amounting to a discriminatory assessment of their property." *Allright Props.*, 317 Wis. 2d 228, ¶52 (citation omitted).  Uniformity requires assessments to be set at the same percentage of fair market value. *Property Assessment Manual*, 7-11 (uniformity "require[s] that assessments be at the same percent or fraction of the full value").

11

¶23 "Uniformity does not require that the identical method or approach be used in determining what the assessed value should be." ***Id.*** (emphasis omitted). "What is critical for uniformity is not the methodology used, but that the tax burden of each dollar's worth of one sort of property is liable for exactly the same tax as a dollar's worth of any other property in that statutory class." ***Id.*** However, where there is evidence that the assessor used an arbitrary methodology for assessing property by singling out one property for special treatment, under a mistaken view of proper assessment practice, the assessment cannot withstand a uniformity challenge. ***Noah's Ark Family Park v. Board of Review of Village of Lake Delton***, 216 Wis. 2d 387, 394, 573 N.W.2d 852 (1998).

¶24 We note first that WMH did not provide evidence of what it believed to be the Marriott's fair market value. Rather than base its argument on the Hotel's fair market value, WMH's arguments hinge on the method of assessment used by the City Assessor. WMH argues that it has shown a uniformity violation because the revenue per available room between its hotel and three other hotels of the same class are similar, but the assessment per room is different. The circuit court rejected this argument, noting that the revenue per available room does not "give[] the full picture of a hotel or tell[] an investor anything about the particular amenities and features of a specific hotel … [thus] … does not determine fair market value." WMH also argues that because the Marriott has the highest taxes per room compared to the other similarly classed hotels, "the tax burden imposed on the Marriott Hotel is far from equal as the Hotel is clearly paying far in excess of its fair share." Both of WMH's arguments ignore the central component of the Uniformity Clause, which is to examine the ratio of fair market value to assessment. Neither the revenue per available room nor the assessment per room are deciding factors in a fair market value determination and WMH has provided

no evidence of what it believes to be the Marriott's fair market value. Consequently, WMH has not rebutted the City's presumption of correctness and has failed to establish a uniformity violation. *See **Bonstores***, 351 Wis. 2d 439, ¶5.

¶25 Finally, there is no evidence that the City Assessor used an arbitrary method of assessment when she used the Marriott's actual expenses for the 2015 assessment instead of the average expenses of a few other hotels of a similar class. *See **Levine***, 191 Wis. 2d at 373-74. Kern discussed her methodology at length, noting that most hotels are valued using the same approach. A variety of assessment methods are recognized by the *Wisconsin Property Assessment Manual*. Kern applied the method that in her judgment was most appropriate to the assessment of a new hotel. WMH's preference for a different assessment method is not required by the assessment manual. We conclude both that WMH has not overcome the presumption that the City's assessment was correct and that the City did not violate the Uniformity Clause of the Wisconsin Constitution.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.