NOAH'S ARK FAMILY PARK, Plaintiff-Appellant,

v.

BOARD OF REVIEW OF the VILLAGE OF LAKE DELTON, Village of Lake Delton, and Frank Kaminski, Thomas Webb, Kay Mackesey, and Todd Nelson, in their Representative Capacities, Defendants-Respondents.†

Court of Appeals

*No. 96–1074. Oral argument January 31, 1997.—Decided April 17, 1997.*

(Also reported in 565 N.W.2d 230.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the brief of *Harvey L. Temkin* and *William M. Conley* of *Foley & Lardner* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Richard W. Cross* and *Jean M. Wilson* of *Cross, Jenks, Mercer and Maffei* of Baraboo.

Before Eich, C.J., Vergeront and Roggensack, JJ.

VERGERONT, J. Noah's Ark Family Park, Inc. appeals from a judgment affirming the decision of the Board of Review of the Village of Lake Delton, which upheld the 1995 assessment of Noah's Ark Water Park in the Village of Lake Delton. The assessment for the 1995 tax year was $18,000,000, while the 1994 assessment was $4,512,000. The increased assessment was triggered by an arms-length sale of the property in early 1994. Noah's Ark challenges the board of review's affirmation of the 1995 assessment on the grounds that it violates the uniformity clause of the Wisconsin Constitution, which requires that "(t)he rule of taxation

shall be uniform,"[1] and is arbitrary, illegal and in contravention of the evidence. We conclude that the 1995 assessment of Noah's Ark Water Park violates the uniformity clause and § 70.32(1), STATS., because the assessor undervalued other properties by improperly failing to increase their values based on recent sales. We therefore reverse.[2]

## BACKGROUND

Noah's Ark Water Park is a large water theme park, covering 46.18 acres. It includes a number of water slides, tide pools, miniature golf, a go-cart track,

---

[1] Article VIII, Section 1 of the Wisconsin Constitution provides in full:

Rule of taxation uniform; income, privilege and occupation taxes. SECTION 1. [As amended Nov. 1908, April 1927, April 1941, April 1961 and April 1974] The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods. Taxes shall be levied upon such property with such classifications as to forests and minerals including or separate or severed from the land, as the legislature shall prescribe. Taxation of agricultural land and undeveloped land, both as defined by law, need not be uniform with the taxation of each other nor with the taxation of other real property. Taxation of merchants' stock-in-trade, manufacturers' materials and finished products, and livestock need not be uniform with the taxation of real property and other personal property, but the taxation of all such merchants' stock-in-trade, manufacturers' materials and finished products and livestock shall be uniform, except that the legislature may provide that the value thereof shall be determined on an average basis. Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided.

[2] Noah's Ark also argues that the board's decision violates the equal protection clause of the Wisconsin and United States Constitutions. However, because of our disposition of the other issues, we do not address this argument.

picnic areas, restaurants and food stands. The original real estate transfer return for the 1994 sale records the sale price as $22,500,000. Marshall Knutson, the assessor for the Village of Lake Delton, increased the value of the property for the tax year 1995, based on that sale price, arriving at an assessment of $18,000,000.[3]

Noah's Ark objected to the assessment pursuant to § 70.47(7), STATS., and as required by that statute, the board of review held a hearing on the objection. At the hearing, Noah's Ark objected to the assessment on the ground that Knutson had not adjusted the assessment of other commercial properties sold in 1994 to reflect the increased value indicated by the sale price.[4] At the hearing, Knutson testified that he considered Noah's Ark Water Park, and another water park in the village, Family Land, to be unique properties. Knutson increased the assessment of Family Land for the 1995 tax year, even though there had been no recent sale of that property, because of the Noah's Ark sale. He considered Noah's Ark Water Park and Family Land to be comparable properties. Family Land challenged its 1995 assessment at the same hearing, contending it was unfairly singled out for a reassessment because

---

[3] Although the board states in its brief that the assessor arrived at $18,000,000 by adjusting the sale price downward by twenty percent "in conformity with the Wisconsin Department of Revenue equalization requirements," we are unable to find anything in the record that explains how the assessor arrived at an assessment of $18,000,000 other than his general testimony that he based it on the recent sale.

[4] Noah's Ark also challenged the original transfer tax return as a basis for the 1995 assessment because it had amended the return to reflect a lower sale price. However, it does not pursue that issue on appeal.

there had been no recent sale of its property and the recent sales of other commercial properties did not lead to a reassessment of those properties.

The taxpayers introduced evidence of sales during 1994 of nine commercial properties, besides Noah's Ark Water Park.[5] Although the 1994 assessments were sub-

---

**Anderson Amusements**

| | |
|---|---|
| 1994 sale price | $ 650,000 |
| 1994 assessment | $ 280,900 |
| 1995 assessment | $ 397,900 |

**Dell View Golf Course**

| | |
|---|---|
| 1994 sale price: | $1,350,000 |
| 1994 assessment: | (parcels did not exist in 1994) |
| 1995 assessment: | $ 120,000 |

**New Concord Inn**
411 Wis. Dells Parkway

| | |
|---|---|
| 1994 sale price: | $4,000,000 |
| 1994 assessment: | $2,219,500 |
| 1995 assessment: | $2,219,500 |

**Flamingo Hotel**
(adjoins Noah's Ark Water Park)
1220 Wisconsin Dells Parkway

| | |
|---|---|
| 1994 sale price: | $4,600,000 |
| 1994 assessment: | $2,135,800 |
| 1995 assessment: | $2,135,800 |

**Ho Chunk Lodge**

| | |
|---|---|
| 1994 sale price: | $1,340,000 |
| 1994 assessment: | $1,008,400 |
| 1995 assessment: | $1,008,400 |

**Riviera Motel**

| | |
|---|---|
| 1994 sale price: | $1,336,000 |
| 1994 assessment: | $1,083,500 |
| 1995 assessment: | $1,083,500 |

stantially below the sale prices for six properties, their 1995 assessments were not increased to reflect an increase in their fair market value based on the sale price.[6] Thus these six properties were assessed in 1995 at an amount between approximately ninety-one percent and nineteen percent below their fair market values as demonstrated by their recent sales.[7]

**Victorian Village**

| | |
|---|---|
| 1994 sale price: | $ 230,000 |
| 1994 assessment: | $ 316,400 |
| 1995 assessment: | $ 316,400 |

**Ravina Inn**

| | |
|---|---|
| 1994 sale price: | $ 800,000 |
| 1994 assessment: | $ 919,000 |
| 1995 assessment: | $ 917,200 |

**Del Rancho Motel**

| | |
|---|---|
| 1994 sale price: | $ 414,000 |
| 1994 assessment: | $ 530,000 |
| 1995 assessment | $ 530,000 |

[6] The taxpayers' exhibits show that the assessment of Anderson Amusements was increased from $280,900 in 1994 to $397,900 in 1995. The sale price was $650,000. We are unable to find an explanation in the record for the increased assessment of this property in 1995, but it does not appear to be related to the sale price.

[7]

| | |
|---|---|
| Anderson Amusements: | 39% below sale price |
| Dell View Golf Course: | 91% below sale price |
| New Concord Inn: | 45% below sale price |
| Flamingo Hotel: | 54% below sale price |
| Ho Chunk Lodge: | 25% below sale price |
| Riviera Motel: | 19% below sale price |

Knutson testified that although the sale prices of motels and hotels in the village were generally speaking above their 1994 assessed values, the difference was not as great as that between the Noah's Ark Water Park sale price and its 1994 assessed value. Consequently, the reason he changed the assessed value of Noah's Ark Water Park but not of the other properties that had recent sales.

The board affirmed the assessment of Noah's Ark Water Park. In its discussion prior to its decision, the board's chair repeated his statement, made at the hearing, that the last reassessment of the district was done in 1993, that Knutson was under a maintenance contract for 1995; and under that contract Knutson did not do a reassessment or reevaluation of the whole district but could, " [at] his prerogative . . . single out individual property owners if he so chooses, whether its a significant sale or in his [sic] case unique situations for assessment."

The board did not affirm the assessor's assessment of Family Land but decided that the assessment should remain at its 1994 level. The discussion indicates the board had two reasons for that decision: (1) it did not consider Family Land comparable to Noah's Ark Water Park because Noah's Ark Water Park had a much greater volume of business; and (2) there had been no recent sale of Family Land, and other commercial properties that had sold for prices above their 1994 assessed values did not have increased assessments for 1995.

Noah's Ark petitioned for review of the board's decision by certiorari and the trial court affirmed the board's determination. It concluded that because no other properties were comparable to Noah's Ark Water Park, the board's decision did not violate the uniform-

ity clause, and the board acted reasonably in affirming the assessment based on evidence of a recent arms-length sale.

Our scope of review on certiorari is the same as that of the circuit court. *State ex rel. Levine v. Board of Review of the Village of Fox Point,* 191 Wis. 2d 363, 370, 528 N.W.2d 424, 426 (1995). Our review is limited to whether the board kept within its jurisdiction, whether it acted according to law, whether it acted arbitrarily or in bad faith, and whether the evidence before the board can reasonably sustain the assessment. *Id.*

## DISCUSSION

On appeal, Noah's Ark does not assert that the 1995 assessment was based on an overvaluation of its property, but focuses its challenge on the undervaluation of other commercial properties that recently sold for a price above their 1994 assessed values. Noah's Ark contends that the singling out of its property for an increased assessment based on a recent sale and the failure to increase the assessment of other commercial properties based on their recent sales results in a discriminatory and arbitrary assessment on its property that forces it to bear an unequal tax burden. The board responds, first, that Noah's Ark may not pursue the appeal because it did not comply with the procedures set forth in § 70.47(7)(a), STATS., which provides in part:

No person shall be allowed in any action or proceedings to question the amount or valuation of property unless such written objection has been filed and such person in good faith presented evidence to such board in support of such objections and made full disclosure before said board, under oath of all of

that person's property liable to assessment in such district and the value thereof. The requirement that it be in writing may be waived by express action of the board.

Second, the board contends, even if Noah's Ark may pursue this appeal, the board properly affirmed the assessment because Noah's Ark has not shown that the other commercial properties it refers to are comparable properties.

We reject the board's argument that Noah's Ark may not pursue this appeal. The board contends that Noah's Ark violated § 70.47(7)(a), STATS., because it did not provide certain information to the board concerning the allocation of the actual purchase price of the property. Noah's Ark told the board it did not do so because it had no assurance that the information would remain confidential. The information requested appears relevant to a valuation of Noah's Ark's property. However, since Noah's Ark is not challenging the valuation of its property on appeal, we fail to see the relevance of whether Noah's Ark did 'or did not comply with § 70.47(7)(a) in this regard.

Turning to Noah's Ark's challenge under the uniformity clause, we begin by summarizing the principles that govern application of the uniformity clause to property taxes:

> 1. For direct taxation of property, under the uniformity rule there can be but one constitutional class.
>
> 2. All within that class must be taxed on a basis of equality so far as practicable and all property taxed must bear its burden on an *ad valorem* basis.
>
> 3. All property not included in that class must be absolutely exempt from property taxation.
>
> . . . .

310

5. While there can be no classification of property for different rules or rates of property taxation, the legislature can classify as between property that is to be taxed and that which is to be wholly exempt, and the test of such classification is reasonableness.

6. There can be variations in the mechanics of property assessment or tax imposition so long as the resulting taxation shall be borne with as nearly as practicable equality on an *ad valorem* basis with other taxable property.

*Gottlieb v. City of Milwaukee*, 33 Wis. 2d 408, 424, 147 N.W.2d 633, 641–42 (1967).[8]

The assessment of real property for property tax purposes is done in two different stages—evaluation and then assessment. *State ex rel. Hensel v. Town of Wilson,* 55 Wis. 2d 101, 105, 197 N.W.2d 794, 795 (1972). In order to ensure a uniform method of taxation, § 70.32(1), STATS., requires assessors, in valuing real estate, to determine its fair market value, using the best information the assessor can practicably obtain.[9] *Levine,* 191 Wis. 2d at 372, 528 N.W.2d at 427.

---

[8] *Gottlieb* held that an urban development statute violated the uniformity clause. The statute permitted a local governing body to exempt property held by a redevelopment corporation from an increase in taxation above that which was payable based on the last valuation of the property prior to transfer to the corporation. *Gottlieb v. Milwaukee,* 33 Wis. 2d 408, 432, 147 N.W.2d 633, 645–46 (1967).

[9] Section 70.32(1), STATS., provides:

(1) Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03 (2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In

311

Fair market value is commonly defined as the amount the property could be sold for in the open market by an owner willing and able but not compelled to sell to a purchaser willing and able but not obliged to buy. *Id*. The assessor must value property recently involved in an arms-length sale at its purchase price. *Id*. at 373, 528 N.W.2d at 428. The use of other means to value the property in the presence of an arms-length sale violates § 70.32(1) and constitutes an error of law, which this court may correct on certiorari. *Id*.

■

Case law has established that under the uniformity clause, a taxpayer may challenge the assessment of his/her property, even though that assessment is based on fair market value, if assessments of other taxpayers are based on an undervaluation of their property. *See Hensel*, 55 Wis. 2d at 108–09, 197 N.W.2d at 797; *Levine*, 191 Wis. 2d at 371–72, 528 N.W.2d at 427. The dispute in this case centers on what the taxpayer must show to prevail on such a challenge. Noah's Ark contends that it has met its burden by showing that the assessor increased the value of its property because of a recent sale but did not increase the value of other commercial properties based on recent sales. The board's primary contention is that Noah's Ark must also show that those other properties are "comparable properties," as defined in *Rosen v. City of Milwaukee,* 72 Wis. 2d 653, 665, 242 N.W.2d 681, 686 (1976).

determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

In *Rosen*, the court addressed this question: what is "the best information" of fair market value under § 70.32(1), STATS., when there is no recent sale of the property. *Rosen*, 72 Wis. 2d at 663–65, 242 N.W.2d at 685–86. The court held that in the absence of a recent sale of the property, the sale of "reasonably comparable" property is the best information of market value, and it described the factors to take into account in determining whether other property is sufficiently similar to the property being valued to warrant reliance on the sale price of that other property as evidence of the fair market value of the property being valued. *Id.* at 665, 242 N.W.2d at 686.

From *Rosen* we see that the comparability of other property is relevant to valuing property when there is no recent sale of the property being valued. However, in this case, there are recent sales of both Noah's Ark property and the other commercial properties Noah's Ark claims are undervalued. There is therefore no need to look to comparable properties to value Noah's Ark or other commercial properties instead of using the recent sales of those properties, and, indeed, it is improper to do so. *See id.* at 662–63, 242 N.W.2d at 685.

The board finds support in *Hensel* and *Levine* for its argument that Noah's Ark must prove comparability. In both cases taxpayers prevailed on uniformity challenges based on the undervaluation of other property. In *Hensel*, the taxpayer challenged an assessment of its property based on a value derived from a recent sale on the ground that comparable property in the area was undervalued. The circuit court held that once a fair sale established the value for the assessed property; the taxpayer could not challenge its assessment based on the lower valuation of comparable property. The supreme court reversed, concluding that a tax-

payer may establish a uniformity violation by showing that the assessment of comparable property is significantly less than that of the taxpayer's property, even if the taxpayer's assessment is properly based on a recent sale. *Hensel,* 55 Wis. 2d at 105–06, 197 N.W.2d at 796. Although the basis for the taxpayer's claim of discrimination was based on a comparison of its assessment to that of comparable properties, nothing in *Hensel* suggests that that is the only way to establish a uniformity violation.

The same is true of *Levine.* In *Levine,* two taxpayers challenged the assessment of their lakefront homes on uniformity grounds, contending that their properties were assessed at or above fair market value, while older but comparable homes were not. The assessor had based the fair market value of the taxpayers' homes on recent sales, but had disregarded the recent sale prices of the older homes because, in the assessor's opinion, the purchasers of those homes were overpaying. The taxpayers presented evidence of four other homes which were assessed based on values that were between thirteen and thirty-three percent below their recent sale prices. The supreme court held that the assessor's failure to use the recent sale price of the older properties constituted arbitrary and improper assessment methods in violation of § 70.32(1), STATS. *Levine,* 191 Wis. 2d at 373–74, 528 N.W.2d at 428.

The precise issue presented in *Levine* was whether the taxpayers had to present evidence that two percent of the properties in the district were underassessed based on the improper assessment methods in order to prevail on their uniformity claim. The supreme court held they did not, concluding that the older case that the court of appeals had relied on, *State ex rel. Walthers v. Jung,* 175 Wis. 58, 183 N.W. 986 (1921), did not

establish a bright line two percent rule. *Levine*, 191 Wis. 2d at 375–76, 528 N.W.2d at 429. The *Levine* court also noted that *Walthers* sought to prevent taxpayers from selectively picking a few low comparison assessments and then complaining that their property was overassessed, whereas the assessments in *Levine* involved an arbitrary method that used improper considerations. *Id.* at 375, 528 N.W.2d at 429. The *Levine* court concluded that the taxpayers had satisfied their evidentiary burden of proving that the assessor failed to follow the statute in his assessment of other properties and that the board acted arbitrarily in approving that assessment. *Id.* at 377, 528 N.W.2d at 429–30. As in *Hensel*, the undervalued properties on which the taxpayers in *Levine* rested their claim of lack of uniformity were described by the taxpayers as "comparable properties," but there is nothing in the reasoning or analysis of the *Levine* court that suggests that this was a necessary condition of their claim.

The Village of Lake Delton Board of Review emphasizes this statement in *Levine* which is followed by a citation to *Hensel*: Under the rule of uniformity taxpayers may demonstrate that, "although their properties were assessed at fair market value, other comparable properties were assessed significantly below fair market value, thus amounting to a discriminatory assessment of their property." *Levine,* 191 Wis. 2d at 376, 528 N.W.2d at 429, citing *Hensel*, 55 Wis. 2d at 105–06, 197 N.W.2d at 795–96. However, as we have already discussed, although the undervalued properties were comparable properties in *Hensel*, the *Hensel* court did not state or suggest that undervaluation of only comparable properties establishes a uniformity violation. It is a misreading of *Levine* to elevate its description of *Hensel* to a requirement that the proper-

ties claimed to be undervalued in a uniformity challenge must always be comparable properties. Indeed, the crux of the *Levine* court's decision is the improper method of valuation—ignoring recent sales of other properties and thus valuing those other properties below fair market. That is an improper method and results in undervaluation whether the properties are comparable or not.

The board also argues that our decision in *State ex rel. N/S Associates v. Board of Review of the Village of Greendale*, 164 Wis. 2d 31, 473 N.W.2d 554 (Ct. App. 1991), supports its position. In *N/S Associates,* the taxpayer challenged the assessment of the Southridge mall for the year 1989 on the ground that the assessor had overvalued the property based on a recent sale. We concluded there was ample evidence upon which the board could sustain the assessor's valuation of the property. *Id.* at 58, 473 N.W.2d at 564. In rejecting the taxpayer's uniformity challenge, we noted the extensive testimony of the assessor on the uniformity analysis he had conducted for 1988 and 1989, which included an analysis of "237 other properties that had been sold in 1988 and a comparison of their pre-sale assessment to the sale price, and an explanation of why he concluded that an increase in value was warranted for the Southridge mall, but not the other properties." *Id.* at 61–62, 473 N.W.2d at 565–66.

The other properties in *N/S Associates* were not described as comparable properties. However, the board relies on our statement in *N/S Associates* which was followed by a citation to *Hensel*: "An assessment violates the uniformity clause if, for some reason, one parcel of property is taxed at a higher effective rate than a similarly-situated parcel of the same class. . . ." *Id.* at 60, 473 N.W.2d at 565, citing *Hensel*, 55 Wis. 2d

at 106–09, 197 N.W.2d at 796–98. Apparently the board construes the phrase "similarly-situated parcel of the same class" to mean "comparable properties."[10] But the comparability of the properties was neither expressly nor implicitly a factor in our decision in *N/S Associates*. The recent sales of the allegedly undervalued properties in *N/S Associates,* not comparability, were the basis for the unsuccessful uniformity claim in *N/S Associates*.

■

We conclude that neither *Hensel, Levine,* nor *N/S Associates* supports a requirement that a taxpayer making a uniformity challenge must always show that the undervalued properties are comparable properties within the meaning of *Rosen*. We also conclude that such a requirement is inconsistent with the case law interpreting the uniformity clause. *Gottlieb* makes clear that, for purposes of the uniformity clause, there is only one constitutional class—that property which is taxable—and the burden of taxation must be borne, as nearly as practicable, equally among all the property within that taxable class, based on the value of the property. *Gottlieb,* 33 Wis. 2d at 424, 147 N.W.2d at 641–42. *Gottlieb* expressly rejected the argument that the uniformity clause permits different classifications of taxable real property as long as there is uniformity within each classification. *Id.* at 427, 147 N.W.2d at 643. *Hensel* describes *Gottlieb* as representing the proper interpretation of the uniformity clause and makes this statement, citing to *Gottlieb,* "[The uniformity clause] require [s] that all property within a class 'must be taxed on a basis of equality so far as practicable.' " *Hensel,* 55 Wis. 2d at 106, 197 N.W.2d at

[10] We explain in the next paragraph what "class" means in the context of a uniformity challenge.

796. The board erroneously interprets this reference to "class" as relating to particular types, uses or classifications of property. But, when this reference is read in the context of *Gottlieb*, "class" refers to the one class of real property that is subject to taxation.[11]

It is not a defense to a uniformity challenge that the alleged undervalued property is not comparable to the taxpayer's property, unless the taxpayer's evidence of the undervaluation of the other properties depends upon comparability. Where, as in this case, the claim of undervaluation of other property is based on evidence of recent sales, comparability is not necessary to prove undervaluation.

With the issue of comparable properties resolved, we now decide whether Noah's Ark has satisfied its burden of proving a violation of the uniformity clause. We take our analysis from *Levine* because it is the most recent comprehensive discussion of the uniformity clause by the supreme court and because the facts and issues are similar in certain—although not all—important respects. In this case, as in *Levine*, the taxpayer presented evidence of other properties that had a recent sale at a price above the prior year's assessed value.

---

[11] The properties that Noah's Ark claims are undervalued are in the use classification of "commercial." Section 70.32(2), STATS., directs that after the assessor has determined values, the assessor is to divide the properties into certain use classifications and record them in separate columns according to those classifications. One of those classifications is commercial. Because the evidence of undervalued properties that Noah's Ark has introduced relates to commercial properties, we confine our analysis to those properties. In doing so, we do not suggest that the uniformity clause requires uniformity only within a particular use classification.

Knutson explained that although he was aware of the sales of these hotels and motels, he did not make adjustments in the 1995 assessments based on these sales because these sale prices were not as much above their 1994 assessments as the sale price of Noah's Ark Water Park was above its 1994 assessment. This might well be a reasonable explanation if the sale prices of the other properties were only slightly above their 1994 assessments. However, the sale prices of the other properties were significantly higher than their 1994 assessments, ranging from approximately 123% to 1125% of those assessments.[12] Put differently, the six other properties were assessed for 1995 at ninety-one percent to nineteen percent below their fair market value.[13] As did the assessor in *Levine*, Knutson acknowledged that he did not use the best information—recent sales—to value these other properties. Although Knutson had a different reason for doing so than the assessor in *Levine*, his method of assessment nevertheless violated § 70.32(1), STATS. It is also an arbitrary method given the difference between the sale prices and the 1994 assessments of the other properties.

---

[12]

| Anderson Amusements | 231% of 1994 assessment<br>163% of 1995 assessment<br>(*see supra* note 6) |
|---|---|
| Dell View Golf Course | 1125% |
| New Concord Inn | 180% |
| Flamingo Hotel | 215% |
| Ho Chunk Lodge | 133% |
| Riviera Motel | 123% |

[13] *See supra* note 7.

319

 Knutson also explained that he believed that "the equalized value developed by the Department of Revenue also includes all these motel, hotel sales, but the water park one was so different . . . that [he] didn't change anything else." The record does not disclose the equalized values he was referring to. Equalization is the Wisconsin Department of Revenue's independent evaluation of the total value of real property within a municipality. *State ex rel. Kesselman v. Board of Review for the Village of Sturtevant,* 133 Wis. 2d 122, 131, 394 N.W.2d 745, 749 (Ct. App. 1986). It is not the measure of the fair market value of a particular parcel within a municipality but rather a test of the local assessor's overall valuations. *Id.* at 131–32, 394 N.W.2d at 749. Equalization is concerned with equity between municipalities, while the local assessor's concern is properly with equity among individual property assessments. *Id.* at 132, 394 N.W.2d at 749. In *Kesselman,* we held that because equalized value is not a measure of fair market value of individual properties, it is an improper consideration for an assessor to take it into account in valuing property, and we remanded for reassessment. *Id.* at 132–33, 394 N.W.2d at 749. To the extent that the assessor in this case took the equalized value into account in considering the fair market value of individual properties, that is an improper method and a violation of § 70.32(1), STATS.

 In its discussion of the Family Land assessment, the board expressed concern that the assessor had increased the value of that property but not of motels and hotels whose recent sale prices were above the prior assessment. That apparently was one reason the board voted not to adopt the assessor's increased value

for Family Land. However, in its discussion of the assessment of Noah's Ark Water Park, the board apparently accepted the view expressed by the chair that because the assessor was under a maintenance contract rather than a contract to reassess the entire district, the assessor could decide whether or not to increase values of properties based on recent sales, and could "single out individual property owners if he so chooses, whether its a significant sale or in [this] case a unique situation." The nature of the village's contractual arrangement with the assessor is not legally relevant to the validity of a particular assessment. While the assessor may not have been under a contractual obligation to reassess the entire district, the assessor had to comply with § 70.32(1), STATS., and with the uniformity clause in increasing the assessment of any particular property. By approving the increased assessment of Noah's Ark Water Park in spite of the evidence that other commercial properties with recent sales at a price above prior assessments did not have their assessments increased to reflect the sale price, the board acted arbitrarily and in violation of the law.

On appeal, the board advances two additional arguments to support its action. First, the board argues in its reply brief that the sale prices of the other commercial properties do not show that those properties are undervalued because the assessments were very close to the equalized value of the properties. The board does not cite to the record for the equalized values, and we are not able to find them. More importantly, as we have explained above, equalized value is not relevant to determining whether a particular property is properly valued.

Second, the board's counsel stated at oral argument that the assessor was not required to consider whether the assessment of other properties should be adjusted based on their recent sales because the village had a "grace period" by virtue of § 70.05(5), STATS., to adjust those assessments. Section 70.05(5)(b) requires that each taxation district shall assess property at full value at least once in every five year period. Subsections (c) through (g) provide a mechanism for the department of revenue to supervise the assessment in districts that have not met particular ratios of assessed value to full value for a particular number of years. We do not agree with the board that a district's compliance with § 70.05(5) is a substitute for compliance with § 70.32(1), STATS., and with the uniformity clause when assessing particular property. Nothing in the language of § 70.05 suggests this is the case, and the board has provided us with no authority for this proposition.

Having concluded that the board acted arbitrarily and in violation of the law in affirming the increased assessment, we must consider the appropriate remedy. We conclude that *Levine* is dispositive on this question. In *Levine,* the court recognized that it was not feasible to create a remedy that satisfied both the constitutional mandate of uniformity and the statutory requirement that real property be assessed at full value: to satisfy the statutory requirement, reassessment of other properties would be required for past years, a task too costly and burdensome to impose on the board. *Levine,* 191 Wis. 2d at 377–78, 528 N.W.2d at 430. The *Levine* court also noted that the board there was currently undertaking a reassessment of all properties for the future. We are advised that this is also the case with the Village of Lake Delton. Like the court in *Levine,* we opt to satisfy the constitutional

mandate of uniformity by directing the board to reassess Noah's Ark Water Park for 1995 in a manner that conforms to the manner in which other commercial property was reassessed for 1995—that is, by disregarding the evidence of the recent sale.

*By the Court.*—Judgment reversed and cause remanded with directions.