U.S. Oil Co., Inc., Plaintiff-Respondent,

State of Wisconsin, Involuntary-Plaintiff,

v.

City of Milwaukee, Defendant-Appellant.

Court of Appeals

*No. 2009AP2260. Oral argument November 10, 2010.*
*—Decided December 28, 2010.*

2011 WI App 4

(Also reported in 794 N.W.2d 904.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Amy R. Seibel* of *Seibel Law Offices LLC*, of Milwaukee, and *Grant F. Langley*, Milwaukee City Attorney, and *Vincent D. Moschella*, Milwaukee Deputy City Attorney, with oral argument by *Amy R. Seibel*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph A. Pickart* and *Ross A. Anderson* of *Whyte Hirschboeck Dudek S.C.*, of Milwaukee, with oral argument by Joseph A. Pickart.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J. The City of Milwaukee appeals a judgment vacating its $14 million tax assessments of U.S. Oil's property for 2004 and 2005 as excessive under the Wisconsin Constitution's Uniformity Clause. The City initially assessed the property—consisting of three oil terminals at the Granville Terminal Complex—at about $6 million for each of these tax years, relying on a 2002 sale of the subject property. When U.S. Oil challenged these assessments in front of the City's Board of Review, the City reassessed the property at over $14 million for each year, this time using an "income" assessment approach instead of the "sales" approach. Even though the City possessed income information for U.S. Oil by March 2006, and even though it could have—for at least seven months thereafter—imputed that information to similarly reassess the other properties at the Granville Terminal Complex for 2004 and 2005, the City chose not to do so. For tax years 2004 and 2005, all of the other properties at the Granville Terminal Complex remained assessed according to the "sales" approach. As a result, U.S. Oil's per-barrel assessments for those years more than doubled all of the others.

¶ 2. We conclude that the $14 million reassessments violate the Uniformity Clause. By assessing U.S. Oil—and *only* U.S. Oil—using the "income" approach when it could have similarly reassessed all comparable properties, the City created a situation in which " 'other comparable properties were assessed significantly below fair market value, thus amounting to a discriminatory assessment of [U.S. Oil's] property.' " *See Allright Props., Inc. v. City of Milwaukee*, 2009 WI App 46, ¶ 52, 317 Wis. 2d 228, 767 N.W.2d 567 (citation omitted). Furthermore, we are not persuaded by the City's contentions that U.S. Oil's uniformity claim should have been dismissed on procedural grounds. U.S. Oil did not fail to exhaust its administrative remedies. It also did not fail to rebut the statutory presumption of correctness that applies to all property tax assessments. *See* WIS. STAT. § 70.49(2) (2007–08).[1] Additionally, we agree with the trial court that the appropriate remedy in this case was to reinstate the initial $6 million assessments. We therefore affirm.

## I. BACKGROUND.

¶ 3. This case concerns three oil terminals—North, South, and Central ("the property")—owned by U.S. Oil located at the Granville Terminal Complex on Milwaukee's northwest side. Also located at the Granville Terminal Complex are terminals owned and/or operated by Flint Hills, Mobil/Citgo, Marathon Oil, and BP Amoco. The City initially assessed the property on January 1, 2004, and January 1, 2005, at just over $6

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

million for each year, or approximately $8.99 per barrel.[2] It arrived at these figures by using a "sales" assessment approach based primarily on a recent sale of the subject property, specifically, the 2002 sale of U.S. Oil's Central terminal.

¶ 4. Compared with assessments of other companies' terminals at the Granville Terminal Complex, the initial U.S. Oil assessments were unremarkable. Indeed, for tax years 2004 and 2005, the City assessed *all* of the properties at the Granville Terminal Complex between $8.00 and $11.10 per barrel. The assessments of the other terminals at the Granville Terminal Complex all relied primarily on the sale of a comparable property, namely, the 2002 sale of U.S. Oil's Central terminal.

¶ 5. Despite the fact that its assessments were in the same range as the assessments of comparable terminals, U.S. Oil, pursuant to WIS. STAT. § 70.47, filed objections with the City challenging the 2004 and 2005 assessments as excessive. After the City of Milwaukee Board of Assessors affirmed the initial assessments, U.S. Oil then appealed to the City of Milwaukee Board of Review.

¶ 6. In preparation for the Board of Review appeal, the City assessor's office asked a new assessor, Daniel Furdek, to review the initial assessments of U.S. Oil's property. Furdek consequently relied on Board of Review subpoena power to obtain detailed financial information from U.S. Oil that the City had been unable to obtain earlier when preparing the initial $6 million assessments. This information included audits, finan-

---

[2] Assessments of oil terminals often are expressed by reference to assessment per barrel, arrived at by dividing the total assessment by a terminal's total capacity. The initial assessments of U.S. Oil's property represented a per barrel assessment of approximately $8.99 per barrel.

cial statements, balance sheets, operating statements, auditor's opinions, gross income, and lease information. Equipped with this information, Furdek, in a report dated March 8, 2006, reassessed the property, this time relying on an "income" approach rather than the "sales" approach previously used to value the property. Based on the "income" approach, Furdek's reassessments of the property totaled over $14 million for each year— dividing out to $21.31 per barrel for 2004 and $21.64 per barrel for 2005. Although the reassessments more than doubled the initial assessments, the City did not notify U.S. Oil of its decision to reassess the property prior to the first Board of Review hearing.

¶ 7. The Board of Review conducted hearings regarding U.S. Oil's 2004 and 2005 assessments on May 17, June 6, and August 1, 2006. Only after the first hearing convened did U.S. Oil learn that the property had been reassessed at over $14 million for each tax year. At the June 6 hearing, counsel for U.S. Oil referenced a Uniformity Clause problem concerning the reassessments:

> [U.S. OIL'S ATTORNEY]: . . . An issue that will come up in this case is whether or not the assessor here is uniformly assessing these properties across the board. It is inherently unfair for the same property—a tank, a terminal—to be assessed in one method—under one method for one taxpayer and under a different method for a different taxpayer, even though they may be located all in the same vicinity.

Due to the fact that U.S. Oil did not learn of the City's reassessments until after the hearings convened, U.S. Oil was not in a position to mount a uniformity challenge.

¶ 8. Meanwhile, during the course of U.S. Oil's appeal to the Board of Review, BP Amoco, who also

415

owned property at the Granville Terminal Complex, challenged its assessments for years 2003 through 2005. After U.S. Oil's Board of Review hearing, but before the Board issued a decision, Furdek concluded that BP Amoco was under-assessed for all three tax years. Because BP Amoco had a pending Board of Review appeal, the City had the ability to re-assess its property. However, it did not do so. Instead, Furdek informed BP Amoco that if it continued to pursue its Board of Review appeal, he would request that the Board increase its assessments based on the information he had learned while preparing for the U.S. Oil appeal. In other words, Furdek would impute the information from the U.S. Oil reassessments to BP Amoco's assessments to bring them to a level on par with U.S. Oil's $14 million reassessments. BP Amoco subsequently withdrew its appeal, and at no time did Furdek or the City ask the Board of Review to increase BP Amoco's assessments.

¶ 9. As with BP Amoco, the City could have also imputed the income information from the U.S. Oil reassessments to reassess all of the other properties at the Granville Terminal Complex for 2004 and 2005; it did not do so. The City had the new information by March 2006, and could have reassessed any of the properties at the Granville Terminal Complex until the end of October 2006, for tax year 2004 and until the end of January 2007, for tax year 2005.[3] Consequently, U.S.

---

[3] The City acknowledged at oral argument that it could have reassessed any of the properties at the Granville Terminal Complex by imputing the income information gleaned from U.S. Oil. *See also* WIS. STAT. § 70.47(10), which provides, in pertinent part, that if a board of review has reason to believe, upon examination of pertinent information, that other property, the assessment of which is not complained of, is assessed above or

Oil remained the only terminal property owner in the City assessed under the "income" approach for tax years 2004 and 2005, resulting in substantially higher assessments of the property.

¶ 10. U.S. Oil consequently filed an action with regard to its 2004–2005 assessments in the trial court pursuant to Wis. Stat. § 74.37(3)(d). While its initial complaint did not reference the Uniformity Clause, U.S. Oil later amended its complaint to include such a claim. Following a court trial, the trial court issued a written decision containing numerous findings of fact and conclusions of law. Based on that decision, the trial court: (1) denied the City's motion to dismiss U.S. Oil's Uniformity Clause claim; (2) vacated the reassessments as excessive under the Uniformity Clause; (3) reinstated the initial, $6 million tax assessments; and (4) ordered the City to refund U.S. Oil the excessive taxes it paid for 2004 and 2005. The City now appeals.

## II. Analysis.

*Standard of Review*

¶ 11. On appeal of an action challenging property tax assessments, we defer to the trial court's findings of fact. *Allright*, 317 Wis. 2d 228, ¶ 13. We will not overturn the trial court's findings unless they are "clearly erroneous," that is, unless they are against the great

---

below the general average of the assessment district, the Board shall provide for the review and potential reassessment of the property. The City therefore had the authority to review and reassess the other terminals once it had information showing that they were not being assessed uniformly in accordance with the methodology used to assess U.S. Oil's property.

weight and clear preponderance of the evidence. *Bloomer Hous. Ltd. P'ship v. City of Bloomer*, 2002 WI App 252, ¶ 12, 257 Wis. 2d 883, 653 N.W.2d 309; *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 25, 290 Wis. 2d 514, 714 N.W.2d 155. Where there is conflicting testimony, the fact finder—in this case the trial court—is the ultimate arbiter of credibility, and we must accept any inferences drawn. *See Bloomer*, 257 Wis. 2d 883, ¶ 12; *see also Sellers v. Sellers*, 201 Wis. 2d 578, 586, 549 N.W.2d 481 (Ct. App. 1996) ("[E]ven though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the finding."). We also give weight to the trial court's decision where its legal conclusion and factual findings are intertwined. *See Aul v. Golden Rule Ins. Co.*, 2007 WI App 165, ¶ 25, 304 Wis. 2d 227, 737 N.W.2d 24.

■■

¶ 12. The application of the law to the facts, however, presents a question of law that we review independently. *Allright*, 317 Wis. 2d 228, ¶ 13. Failure to make an assessment on the statutory basis is likewise an error of law, and we review *de novo* "[w]hether the [c]ity followed the statute in making its assessment." *Adams Outdoor Adver., Ltd. v. City of Madison*, 2006 WI 104, ¶ 26, 294 Wis. 2d 441, 717 N.W.2d 803. We also independently review the trial court's conclusion that the City violated the Uniformity Clause, that is, article VIII, section 1 of the Wisconsin Constitution. *See Duesterbeck v. Town of Koshkonong*, 2000 WI App 6, ¶ 10, 232 Wis. 2d 16, 605 N.W.2d 904 (case involving uniformity claim presented questions of statutory and constitutional interpretation that court reviewed *de novo* ); *see also Northwest Airlines, Inc. v. DOR*, 2006 WI 88, ¶¶ 25, 62–66, 293 Wis. 2d 202, 717 N.W.2d 280

(applying *de novo* review to "questions of law involving statutory interpretation and a challenge to the constitutionality of a tax exemption," including assertion that uniformity clause was violated). Additionally, interpretation of a statute presents a question of law, which we review *de novo* while benefiting from the analysis of the trial court. *See Theis v. Midwest Sec. Ins. Co.*, 2000 WI 15, ¶ 9, 232 Wis. 2d 749, 606 N.W.2d 162.

¶ 13. The City brings forth three bases for reversal. First, the City argues that the trial court erred in denying its motion to dismiss because U.S. Oil failed to exhaust its administrative remedies. Second, the City argues that the trial court erred in finding that U.S. Oil overcame the statutory presumption of correctness with regard to its $14 million reassessments. Third, the City argues that its $14 million reassessments did not violate the Uniformity Clause. The City also takes issue with the trial court's decision to reinstate the initial $6 million assessments. We address each in turn.

*A. U.S. Oil properly exhausted its administrative remedies with the Board of Review.*

██

¶ 14. The City argues that the trial court erred in denying its motion to dismiss U.S. Oil's Uniformity Clause claim. According to the City, because U.S. Oil did not adequately raise the uniformity issue before the Board of Review, it should have been prohibited from raising it at trial.

██

¶ 15. Pursuant to statute, once the Board of Review renders its decision regarding a property tax

419

assessment, a property owner may appeal the decision in one of three ways. *Hermann v. Town of Delavan*, 215 Wis. 2d 370, 379–80, 572 N.W.2d 855 (1998). An owner may appeal from the board's determination by an action for *certiorari* to the trial court under Wis. Stat. § 70.47(13). *Nankin v. Village of Shorewood*, 2001 WI 92, ¶ 3, 245 Wis. 2d 86, 630 N.W.2d 141. An owner may also submit a written complaint with the department of revenue requesting that the department revalue the property. *Id.*; *see also* Wis. Stat. §§ 70.85(1), (4)(b). Or, "after paying the tax on the assessment, a property owner may proceed under Wis. Stat. § 74.37 with a claim for excessive assessment against the taxation district or the county, depending on which entity collected the tax." *Nankin*, 245 Wis. 2d 86, ¶ 3 (footnote omitted). If this claim is denied, the aggrieved property owner may then commence an action at the trial court level under Wis. Stat. § 74.37(3)(d) to recover the amount of the claim not allowed. *See id.* In this case, U.S. Oil chose the final option.

¶ 16. Had U.S. Oil pursued *certiorari* review, the trial court's review would have been limited to the review of the record made before the Board of Review. *See id.*, 245 Wis. 2d 86, ¶ 20. The trial court would not have been able to conduct its own factual inquiry or admit any new evidence. *Id.* On *certiorari* review, the trial court would have only been able to consider: "(1) whether the board acted within its jurisdiction; (2) whether the board acted according to law; (3) whether the board's action was arbitrary, oppressive or unreasonable, representing its will rather than its judgment; and (4) whether the evidence was such that the board might reasonably make the order or determination in question." *Id.*; *Waste Mgmt. of Wisconsin, Inc. v. Kenosha Cnty. Bd. of Review*, 184 Wis. 2d 541, 554, 516 N.W.2d 695 (1994).

¶ 17. As noted, U.S. Oil did not pursue *certiorari* review. It filed its claim pursuant to WIS. STAT. § 74.37(3)(d), which "is not simply another means of judicial review." *See Nankin*, 245 Wis. 2d 86, ¶ 24. Section 74.37(3)(d) actions allow property owners to again fully contest their case in a court trial despite having contested it before the board of review. *Id.* As our supreme court explained in *Nankin*, the differences between *certiorari* review and the § 74.37(3)(d) claim filed by U.S. Oil are considerable:

> To begin with ... certiorari review is limited to a review of the record. In comparison, during a court action, if the action proceeds to trial, the court may make its determination without regard to any determination made at any earlier proceeding. Instead, new evidence may be introduced, and the court may examine this evidence in making its determination. In addition, unlike certiorari review, during a court trial, the court may make its determination without giving deference to any determination made at a previous proceeding. The court must only give presumptive weight to the assessor's assessment. WIS. STAT. § 70.49(2). Finally, unlike a certiorari review, in a trial, the court, upon making its determination, is not required to remand to the board for an assessment. It may make its determination based on the evidence. The court is only limited in the respect that, if a reassessment is necessary, the court must continue the action and order the reassessment before rendering its judgment. WIS. STAT. § 74.39(1). However, even if a reassessment is necessary, the court may still proceed to judgment if it is in the best interests of all parties to the action. § 74.39(3).
>
> The legislative history of WIS. STAT. § 74.37 also supports the conclusion that the legislature intended an action for excessive assessment to provide a significantly different option for property owners than mere certiorari review in challenging their assessments.

421

*Nankin*, 245 Wis. 2d 86, ¶¶ 25–26. Thus, by filing a claim under § 74.37(3)(d), U.S. Oil did not limit itself to only those arguments made before the Board of Review, and it was therefore appropriate for U.S. Oil to amend its pleadings to include a Uniformity Clause claim once it became clear that uniformity was at issue.

¶ 18. Contrary to what the City argues, neither WIS. STAT. § 70.47(7) nor *Hermann* stand for the proposition that U.S. Oil may not raise any issue with the trial court that was not fully argued before the Board of Review. Rather, *Hermann* simply explains that under § 70.47(7), any property owner wishing to challenge a property tax assessment—whether via (1) *certiorari* review, (2) written complaint to the department of revenue, or (3) a claim filed pursuant to WIS. STAT. § 74.37 —must first file an objection before the Board of Review. *See Hermann*, 215 Wis. 2d at 379–82. In *Hermann*, the plaintiffs went directly to the trial court with their uniformity challenge, entirely skipping the Board of Review procedure required by § 70.47. *Id.* In contrast, U.S. Oil did follow the statutory procedure. Indeed, in the instant case the trial court specifically found that U.S. Oil complied with the statutory scheme for initiating its action under § 74.37(3)(d); the City never challenged this finding. Thus, the trial court correctly denied the City's motion to dismiss.

■

¶ 19. Moreover, the trial court did not err when it allowed U.S. Oil to amend its complaint to add a Uniformity Clause challenge—a constitutional claim— because the City was on notice of the issue well before the claim was filed. *See* WIS. STAT. § 802.09(1) (Although a party's absolute right to amend the complaint expires six months after filing, leave to amend "shall be freely given at any stage of the action when justice so re-

quires."). Counsel for U.S. Oil cross-examined City assessor Furdek at the June 6, 2006 Board of Review hearing about the Uniformity Clause implications of his methodology; ironically, this fact is borne out by the testimony that the City cites to support its contention that U.S. Oil never raised the issue. U.S. Oil also argued in its Board of Review post-hearing brief that the City's use of the income approach to reassess only U.S. Oil was non-uniform and violated the Wisconsin Constitution. Furthermore, after U.S. Oil filed its claim with the trial court, counsel for the City acknowledged that the City was on notice of the Uniformity Clause challenge. All of this evidence provided the City with ample notice of U.S. Oil's uniformity claim.

*B. U.S. Oil overcame the statutory presumption of correctness pertaining to the 2004–2005 assessments.*

¶ 20. The City also argues that the trial court erred when it found that U.S. Oil overcame the presumption of correctness prescribed by WIS. STAT. § 70.49(2). Section 70.49(2) provides:

> The value of all real and personal property entered into the assessment roll to which such affidavit is attached by the assessor shall, in all actions and proceedings involving such values, be presumptive evidence that all such properties have been justly and equitably assessed in proper relationship to each other.

¶ 21. In reassessing U.S. Oil's property, the City utilized a different methodology (an "income" approach instead of a "sales" approach) to produce a result that

was more than double the per-barrel assessment of any other terminal at the Granville Terminal Complex.[4] We conclude that this evidence is significant enough to rebut the presumption that all properties had been justly and equally assessed in proper relationship to each other. *See Allright*, 317 Wis. 2d 228, ¶ 14. The trial court's conclusion regarding the statutory presumption was therefore correct.

## C. The City's reassessments of the property violated the Uniformity Clause of the Wisconsin Constitution.

¶ 22. Having concluded that U.S. Oil's uniformity claim should not have been dismissed on procedural grounds, we now turn to the City's substantive basis for appeal. The City argues that the trial court erred in finding that the reassessments of U.S. Oil's property violated the Uniformity Clause of the Wisconsin Constitution.

¶ 23. Article VIII, section 1 of the Wisconsin Constitution[5] requires that the method or mode of taxing

---

[4] The trial court specifically found—and no party disputes —that all of the terminals located at the Granville Terminal Complex are physically adjacent to one another, that they share the same physical characteristics and features, that they all serve the same function and are used in the same fashion, that they are all serviced from the same pipeline, and that they are all being used at "their highest and best use" as oil terminals. In other words, the trial court found—and no party disputes—that all of the properties at the Granville Terminal Complex "are comparable to one another."

[5] Wisconsin Constitution Article VIII, section 1 provides in part: "The rule of taxation shall be uniform." Our interpretation of the rule of uniformity is longstanding and consistent:

real property must be applied uniformly to all classes of property within the tax district. *State ex rel. Hensel v. Town of Wilson*, 55 Wis. 2d 101, 106, 197 N.W.2d 794 (1972).

¶ 24. WISCONSIN STAT. § 70.32(1) seeks to ensure a uniform method of taxation by requiring assessors to assess real estate at its fair market value using the " 'best information' " that the assessor can practicably obtain. *State ex rel. Levine v. Board of Rev. of the Village of Fox Point*, 191 Wis. 2d 363, 372, 528 N.W.2d 424 (1995) (citation omitted). The "best information" of fair market value is a recent sale of the property at issue. *Id.* at 373 (citation and internal quotation marks omitted); *see also Allright*, 317 Wis. 2d 228, ¶¶ 20–22; *Adams*, 294 Wis. 2d 441, ¶¶ 34–35 (explaining differences between "Tier 1," "Tier 2," and "Tier 3" assessment methodologies). This is the information the assessor must use if it is available. *Levine*, 191 Wis. 2d at 373. If there has been no such recent sale, then the assessor must use recent sales of reasonably comparable property. *Id.*; *Allright*, 317 Wis. 2d 228, ¶¶ 20–22; *Adams*, 294 Wis. 2d 441, ¶¶ 34–35. In the absence of recent sale information, the assessor may consider all the factors

> Its mandate . . . is very brief, but long enough . . . to embrace within it clearly and concisely the doctrine . . . of equality. 'The rule of taxation shall be uniform,' that is to say, the course or mode of proceeding . . . shall be uniform; it shall in all cases be alike. The act of laying a tax on property consists of several distinct steps, such as the assessment or fixing of its value, the establishing of the rate, etc.; and in order to have the rule or course of proceeding uniform, each step taken must be uniform.

*See State ex rel. Levine v. Board of Rev. of the Village of Fox Point*, 191 Wis. 2d 363, 371–72 n.6, 528 N.W.2d 424 (1995) (citation omitted; omissions in *Levine*).

collectively which have a bearing on value of the property to determine fair market value. *Levine*, 191 Wis. 2d at 373; *Adams*, 294 Wis. 2d 441, ¶ 34.

¶ 25. Even if an assessor utilizes the correct methodology in assessing a particular property, a municipality can still violate the Uniformity Clause if the resulting assessment is not uniform with other property assessments in the district. *See, e.g., Levine*, 191 Wis. 2d at 377; *Noah's Ark Family Park v. Board Of Rev. of the Town of Lake Delton*, 210 Wis. 2d 301, 319–21, 565 N.W.2d 230 (Ct. App. 1997) (*Noah's Ark I*), *aff'd*, 216 Wis. 2d 387, 573 N.W.2d 852 (1998) (*Noah's Ark II*). For example, a property owner may establish a uniformity violation by demonstrating that "other comparable properties" in the district " 'were assessed significantly below fair market value, thus amounting to a discriminatory assessment of their property.' " *Allright*, 317 Wis. 2d 228, ¶ 52 (citation omitted). This was the case in *Levine*. In *Levine*, the assessor valued the petitioners' properties—"newer" houses in Fox Point—at fair market value, but decided to assess several "older" houses significantly below fair market value. *Id.*, 191 Wis. 2d at 367–68. One property sold for $626,000, while its assessed value was $488,000; another sold for $615,000, while its assessed value was $533,400; yet another sold for $383,000, while its assessed value was $290,000; and another sold for $480,000, while its assessed value was $412,000. *Id.* at 368 n.2. The assessor under-assessed the older houses despite recent sale information because in his opinion the purchasers of the older houses overpaid. *Id.* at 368, 376. The supreme court found that by undervaluing the older houses, the village violated uniformity with respect to the petitioners' houses, even though the petitioners' houses were accurately valued. *Id.* at 377.

¶ 26. Similarly, a property owner may establish a uniformity violation by demonstrating that a municipality approved an increased assessment of one particular property "in spite of the evidence that other . . . properties with recent sales at a price above prior assessments did not have their assessments increased." *Noah's Ark I*, 210 Wis. 2d at 321. This was the case in *Noah's Ark I*. Although the assessor in that case correctly assessed the plaintiff's property using recent sales information, he ignored recent sales information of other commercial properties in the area when assessing the other commercial properties. *See id.* at 306–07. The result was that the plaintiff's property tax assessment was proportionally higher than other commercial properties in the area. *See id.* at 307–08. In other words, the assessor improperly "singled out" Noah's Ark. *Id.* at 321; *Noah's Ark II*, 216 Wis. 2d at 393. Accordingly, "[b]y approving the increased assessment of Noah's Ark Water Park in spite of the evidence that other commercial properties with recent sales at a price above prior assessments did not have their assessments increased . . . the board acted arbitrarily and in violation of the law." *Noah's Ark I*, 210 Wis. 2d at 321.

¶ 27. With these principles in mind, we now turn to the $14 million reassessments of U.S. Oil's property. There is no dispute that Furdek used the income method to reassess the property. In preparation for the Board of Review hearing, Furdek reviewed U.S. Oil's initial $6 million assessments for 2004 and 2005, relying on Board of Review subpoena power to obtain detailed financial information from U.S. Oil, such as audits, financial statements, balance sheets, operating statements, auditor's opinions, gross income, and lease information. Furdek then prepared a report in which he

427

revalued U.S. Oil's property at over $14 million—a value more than $8 million higher than the initial assessments. The assessments of every other property at the Granville Terminal Complex, on the other hand, stayed the same. The other properties remained assessed according to the sales method, which had relied on a 2002 sale of U.S. Oil's Central terminal. Prior to Furdek's reassessment of U.S. Oil, all of the properties at the Complex, properties which the parties agree are comparable, had been assessed according to the same methodology and had received assessments that differed only slightly on a per-barrel basis. Yet in March 2006, Furdek singled out U.S. Oil, using a different methodology to arrive at a rate more than *twice* the per-barrel assessment of every other property. Furdek obtained income information from U.S. Oil, which the City acknowledged it could have imputed to all of the properties at the Granville Terminal Complex.[6] It could have reassessed the other properties at any time before the Board of Review adjourned—specifically, before November 1, 2006, for tax year 2004 and January 30, 2007, for tax year 2005. But it chose not to do so. Indeed, with respect to BP Amoco, it would appear that the City used the specter of reassessment to persuade BP Amoco to withdraw its Board of Review appeal. We conclude that by "singling out" U.S. Oil, by reassessing it at a significantly higher rate using a different methodology and then declining to reassess the comparable terminals by the methodology used for U.S. Oil, the City violated the Uniformity Clause.

¶ 28. Moreover, we are not persuaded by the City's contention that it had a "plan" to reassess all of the properties at the Granville Terminal Complex ac-

[6] *See supra* note 3.

cording to the same income valuation approach that yielded the $14 million assessments of U.S. Oil's property. The trial court's factual findings, which the City does not dispute, show that Furdek had the ability to reassess BP Amoco at a rate on par with U.S. Oil's $14 million reassessments for 2004–2005, but chose not to do so after BP Amoco agreed to dismiss its appeal with the Board of Review. The City also admitted at oral argument that it could have imputed the income information from U.S. Oil to *all* of the terminals at the Granville Terminal Complex. It chose not to do so. As our supreme court found in *Noah's* Ark II, we conclude:

> In this case, however, the Board was not taking steps in a piecemeal approach toward attaining uniformity in assessments over time. Rather, [U.S. Oil] presented evidence that the assessor used an arbitrary methodology for assessing its property. Singling out one commercial property for special treatment in this case . . . cannot withstand a uniformity challenge.

*See id.*, 216 Wis. 2d at 394.

¶ 29. As a final matter, the City contends that the trial court's remedy—reinstatement of the initial $6 million assessments—was inappropriate. We disagree. Courts have the ability to fashion remedies where a municipality has violated the Uniformity Clause even when they may not be able to satisfy both the constitutional mandate of uniformity and the statutory requirement that real property be assessed at full value. *See, e.g., Noah's Ark I*, 210 Wis. 2d at 322. In *Levine*, the court ordered a remand for reassessment of the newer properties in a manner that harmonized with the under-assessed older properties. *Id.*, 191 Wis. 2d at 378. In this case, the trial court did not err in imposing a

remedy that similarly relied on values that will harmonize U.S. Oil's 2004–2005 assessments with those of all of the other properties at the Granville Terminal Complex. We therefore conclude that the trial court's remedy was appropriate.

*By the Court.*—Judgment affirmed.